507 So.2d 806 (1987)
Charles D. WASHAM
v.
Diamond CHANCELLOR, et al.
No. 86-C-2454.
Supreme Court of Louisiana.
May 18, 1987.
Rehearing Denied June 18, 1987.
Paul L. Billingsley, Hammond, for applicant.
Lindsay Larson, III, Earl S. Eichin, Jr., O'Neil, Eichin & Miller, New Orleans, for respondents.
DIXON, Chief Justice.[*]
Writs were granted in this case to determine the extent to which an umbrella liability policy provides uninsured/underinsured motorist coverage when the insured elects to limit that coverage in his underlying automobile liability policy to an amount less than the limits of the underlying automobile policy. The court of appeal affirmed a trial court ruling limiting the liability of the umbrella insurer to the sum which the plaintiff might prove himself to be entitled to recover over and above the $500,000 limit of liability provided by the underlying automobile liability policy. Washam v. Chancellor et al., 498 So.2d 97 (La.App. 5th Cir. 1986). We affirm.
Plaintiff, Charles D. Washam, was seriously injured in a collision between two dump trucks while working as a truck driver for Giambelluca Construction Company, Inc. The other truck was driven by Kenneth Chancellor and owned by Diamond Chancellor. Washam filed suit against Diamond Chancellor and Kenneth Chancellor, *807 Allstate Insurance Company, their liability insurer, and United States Fidelity & Guaranty Company, Giambelluca's underlying automobile liability insurer. Prior to trial Washam settled with Allstate for its policy limits of $100,000, and also settled with USF & G for the $10,000 limit under the uninsured/underinsured motorist coverage of its automobile liability policy. (Although the limit of the USF & G automobile liability policy issued to Giambelluca was $500,000, Giambelluca elected by written waiver to carry only $10,000 worth of uninsured/underinsured motorist coverage).
Subsequent to the settlement with the above defendants, plaintiff brought suit against defendant, Twin City Fire Insurance Company which had issued an umbrella policy to Giambelluca with limits of $5,000,000. This policy was written to indemnify the insured for ultimate net loss in excess of the limits of the underlying insurance policies listed in the schedule of underlying insurance. One such underlying insurance policy was the USF & G automobile liability policy.
This court held in Southern American Insurance Co. v. Dobson, 441 So.2d 1185, 1192 (La.1983), that R.S. 22:1406(D)(1)(a) "require[s] insurance companies doing business in this state to offer uninsured motorist coverage to an insured under the provisions of umbrella and excess policies when those policies cover `liability arising out of the ownership, maintenance, or use of any motor vehicle.'"R.S. 22:1406(D)(1)(a) provides in part as follows:
"No automobile liability insurance ... shall be ... issued ... unless coverage is provided therein ... in not less than the limits of bodily injury liability provided by the policy, ... provided, however, that the coverage required under this Subsection shall not be applicable where any insured ... shall reject in writing the coverage or selects lower limits...." Giambelluca did not sign a written waiver of uninsured motorist coverage with respect to the Twin City umbrella policy.
Neither party questions the fact that uninsured motorist coverage would be afforded under the Twin City policy. The narrow issue presented is whether uninsured motorist coverage is available to plaintiff before the uninsured motorist's liability reaches $500,000.
The plaintiff's position is that the Twin City umbrella policy provides uninsured motorist coverage by law, and, further, that that coverage is available to him upon the exhaustion of the underlying USF & G policy's uninsured motorist coverage. He claims that uninsured motorist coverage and automobile liability coverage are distinct types of insurance and that the lower limit of uninsured motorist coverage to be recognized for Twin City should be that of the underlying coverage for the type of insurance involved since there is no underlying limit listed in the policy.
Twin City's position is that uninsured motorist coverage is included in automobile liability insurance, as are comprehensive and collision coverages, and that under the terms of the policy, coverage begins only when damages exceed the limits of the underlying USF & G automobile liability policy. The underlying policy is listed in the Schedule of Underlying Insurance as "$500,000 combined single limit for bodily injury and/or property damage." Accordingly, the underlying policy's combined single limit of $500,000 for automobile liability must be reached before Twin City's uninsured motorist coverage applies. As Washam's petition prayed for damages of $410,000, Twin City would then have no liability.
The policy in question provides that Twin City will indemnify the insured for ultimate net loss in excess of the underlying limit because of injury or damage to which the insurance applies.[1] "Underlying limit" is *808 defined as "the amount of applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance Policies ..."[2] The attached schedule describes the USF & G policy as an underlying insurance with a limit of liability defined as "$500,000 combined single limit for bodily injury and/or property damage."[3]
An automobile liability insurance policy may be written to indemnify the insured for losses caused by liability, uninsured motorist, comprehensive or collision. Automobile liability policies which contain a combined single limit allow recovery up to that limit for any injury or damage covered by that policy. Of the above listed coverages, only uninsured motorist is statutorily required to be included in every automobile liability policy in an amount equal to the policy limits unless waived by the insured in writing. Because of this statutory requirement, we find that the $500,000 single limit of liability in the underlying USF & G automobile policy included a $500,000 limit of liability for uninsured motorist coverage.
Condition 14 of the Twin City policy, labeled "Maintenance of Underlying Insurance," requires the named insured to maintain each policy described in the declarations section in full effect during the currency of the Twin City policy. Giambelluca's election to reduce the uninsured motorist coverage limits of the underlying automobile policy from $500,000 to $10,000 was a violation of this condition. In the event of a violation the policy provides that "[f]ailure of the named insured to comply with the foregoing shall not invalidate [the Twin City] policy, but in the event of such failure, the Company shall be liable only to the extent that it would have been liable had the named insured complied therewith."[4] If the insured had kept his limits *809 up, the Twin City policy would not have provided coverage until total damages reached an amount in excess of $500,000. The above policy provision clearly states that the threshold of Twin City's coverage would not be lowered by the insured's failure to maintain an underlying policy's limits. Consequently, Twin City is only required to pay damages in excess of $500,000 under the uninsured/underinsured motorist coverage of its umbrella policy insuring Giambelluca Construction Company, Inc.
For the above reasons the ruling of the court of appeal granting summary judgment in favor of Twin City Fire Insurance Company is affirmed.
NOTES
[*] Judge John S. Covington, First Circuit Court of Appeal, sitting in place of Lemmon, J., recused.
[1] Coverage
The Company will indemnify the insured for ultimate net loss in excess of the underlying limit or the self-insured retention, whichever is the greater because of
(a) bodily injury,
(b) personal injury,
(c) property damage or
(d) advertising injury
to which this insurance applies, caused by an occurrence which takes place anywhere in the world."
[2] "`underlying limit' means with respect to each occurrence to which this policy applies the amounts of the applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance Policies less the amount, if any, by which any aggregate limit of such insurance has been reduced by payment of loss. The limits of liability of any underlying insurance policy shall be deemed applicable regardless of any defense which the underlying insurer may assert because of the insured's failure to comply with any condition of the policy."
[3] "SCHEDULE OF UNDERLYING INSURANCES
IT IS UNDERSTOOD AND AGREED THAT THE SCHEDULE OF UNDERLYING
INSURANCES IS AMENDED TO INCLUDE THE FOLLOWING:
CARRIER TYPE OF POLICY LIMITS OF LIABILITY
 BODILY INJURY
U.S.F.&G. COMPREHENSIVE GENERAL $500,000 EACH OCCURRENCE
 LIABILITY $500,000 AGGREGATE
 PROPERTY DAMAGE
 $100,000 EACH OCCURRENCE
 $500,000 AGGREGATE
U.S.F.&G. AUTOMOBILE LIABILITY $500,000 COMBINED SINGLE
 LIMIT FOR BODILY INJURY
 AND/OR PROPERTY DAMAGE
ST. PAUL AUTOMOBILE LIABILITY $500,000 COMBINED SINGLE
 (AS RESPECTS: ANTIQUE LIMIT FOR BODILY INJURY
 AUTOMOBILE) AND/OR PROPERTY DAMAGE
U.S.F.&G. EMPLOYERS' LIABILITY $500,000 ONE ACCIDENT"

[4] "Maintenance of Underlying Insurance

Each policy described in the declarations shall be maintained in full effect during the currency of this policy, except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences taking place during the period of this policy. Failure of the named insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall be liable only to the extent that it would have been liable had the named insured complied therewith.
Upon notice that any aggregate limit of liability under any policy of underlying insurance has been exhausted, the named insured shall immediately make all reasonable efforts to reinstate such limits.
The named insured shall give the Company written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability."