LINDSAY, Judge.
We granted this writ to test the correctness of the trial court’s action in denying a motion for summary judgment. Defendant Chicago Insurance Company (hereinafter “Chicago”) filed the motion seeking summary judgment on its reconventional demand for a declaratory judgment. Because we conclude that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law, we make the writ peremptory, grant the motion, and remand the case for further proceedings.
BACKGROUND FACTS
The plaintiff, D.I. Dupree, was injured on December 15, 1984, when his leg was pinned between the bumper of a car operated by the defendant, Lucille Hill, and the bumper of a stationary trailer owned by Morgan Express, Inc. (hereinafter “Morgan”), which contained parcels for Morgan. The accident occurred in Coushatta, Louisiana, on the premises of the plaintiff’s business, Dupree Tractor Company, Inc. Mrs. Hill had dropped off a package, which the plaintiff was placing in Morgan’s trailer at the time of the accident.
The plaintiff filed suit against Mrs. Hill, Morgan, and Liberty Mutual Insurance Company, which he erroneously believed to be Morgan’s insurer. The plaintiff initially sought damages of $1,475,000; by supplemental petition he increased the sum to $1,875,000. Inasmuch as Mrs. Hill’s insurance coverage was only $10,000, the plaintiff also sued his own uninsured/underin-sured motorist (UM) insurers, South State Insurance Company (now known as First Horizon Insurance Company and hereinafter referred to as “First Horizon”), and Chicago. The plaintiff subsequently settled with Mrs. Hill’s liability insurer, State Farm Insurance Company, for the full policy limits of $10,000. The plaintiff dismissed Mrs. Hill and Liberty Mutual from the suit.
The insurance policies involved this case are the liability and UM policy issued by *1228 First Horizon and the commercial umbrella policy issued by Chicago. The First Horizon policy is a group policy issued to the La-Miss Equipment Dealers to cover the period from August 11, 1982 to August 11, 1985. Plaintiff is a member of the insured group. The First Horizon policy provided automobile liability insurance of $500,000. Consequently, the initial UM coverage under this policy was also $500,000. See LSA-R.S. 22:1406(D)(l)(a). However, a representative of the group executed an endorsement on April 5, 1983, which lowered the UM coverage to $25,000, effective August 11, 1982. Mr. Dupree, d/b/a Du-pree Tractor Company, Inc., was added as a named insured by a later endorsement with an effective date of September 12, 1983.
The Chicago umbrella policy was issued to D.I. Dupree, d/b/a Dupree Tractor Company, Inc., for a period extending from August 11, 1984 to August 11, 1985. The comprehensive automobile liability portion of the policy provided for current and aggregate limits in the amount of $1,000,-000 after exhaustion of the limits of its underlying insurance. In the Schedule of Underlying Insurance in the Chicago policy, the First Horizon policy is listed as the plaintiffs underlying insurance with a combined single limit of $500,000. The last page of the Chicago policy is a UM option form signed in blank by the plaintiff. Although the form contains three options from which to select, none of these was designated by the plaintiff.
On October 24, 1986, Chicago filed a re-conventional demand against the plaintiff seeking a declaratory judgment that its umbrella policy provides coverage for any judgment only to the extent that the judgment exceeds $500,000, and then only up to the policy’s $1,000,000 occurrence limit. Chicago contends that its coverage begins only when plaintiff’s damages exceed the limits of the underlying First Horizon auto liability policy, as those underlying limits are set forth in the Schedule of Underlying Insurance.
The plaintiff opposed the motion for summary judgment claiming that the liability limit of its underlying policy from First Horizon was $500,000, and the UM coverage limit was $25,000. The plaintiff contended that Chicago's policy was to pick up where the underlying policy left off, (i.e., $25,000). He argued that the UM option form he signed in connection with the Chicago policy was ambiguous, and, consequently, it should be construed against Chicago. The plaintiff stated in his affidavit, which was submitted in opposition to the motion for summary judgment, that he intended to have the umbrella coverage pick up where primary coverage left off.
On February 12, 1987, the trial court signed a judgment dismissing Chicago’s motion for summary judgment. It found that the UM coverage existed and that the UM coverage under Chicago’s policy was triggered at the exhaustion of the $25,000 UM limits of the First Horizon policy. The trial court accepted the plaintiffs argument that the limits of the UM coverage of the umbrella policy were lowered due to the failure of the policy to specifically list the amount of the underlying UM limits. Chicago filed a motion for reconsideration of the decision on the motion for summary judgment. The trial court again denied the motion for summary judgment on March 18, 1987.
Chicago took writs to this court. The writ was granted. We directed the trial court to reconsider its ruling in light of the Louisiana Supreme Court’s decision in Washam v. Chancellor, 507 So.2d 806 (La.1987). On remand, the trial court again dismissed Chicago’s motion by a judgment signed on October 22, 1987. In its written reasons, the trial court distinguished the facts of the present case from those in Washam, supra, on the grounds that Mr. Dupree did not voluntarily reduce the underlying UM limits and that the reduction was made before the umbrella policy was issued.
On January 21, 1988, this court again granted Chicago’s writ application. Chicago maintains that the Supreme Court’s decision in Washam dictates that its motion for summary judgment be granted and that the trial court’s ruling to the contrary was *1229 error. According to Chicago, the relevant provisions of the policies in the Washam case and the present case are virtually identical.
LAW
The only issue before this court is whether the UM coverage under Chicago’s policy is available to the plaintiff before the uninsured motorist’s liability reaches $500,000. The identical issue was presented to the Supreme Court in Washam, supra.
In the Washam case, a truck driver was injured in a collision between two dump trucks and, consequently, sued his employer’s underlying automobile liability insurer, USF & G. The limit of the USF & G automobile liability policy was $500,000, but the employer had elected, by written waiver, to carry only $10,000 in UM coverage. Twin City Fire Insurance Company had issued an umbrella policy which also provided coverage for the plaintiff’s employer with limits of $5,000,000, with an underlying coverage threshold of $500,000 as listed in the Schedule of Underlying Insurance. After settling with USF & G for its $10,000 UM limit, Washam sued Twin City under the employer’s umbrella policy. In the umbrella policy’s Schedule of Underlying Insurance,* the underlying policy was listed as “$500,000 combined single limit for bodily injury and/or property damage.”
The Supreme Court found that the threshold at which the umbrella policy would take effect was the combined single limit of $500,000 for automobile liability in the underlying policy, as stated in the Schedule of Underlying Insurance, rather than the $10,000 limit of UM coverage elected by the insured in the underlying policy. The court rejected the argument that the failure of the umbrella policy to specifically list the underlying limit for UM coverage had the effect of lowering the threshold of UM coverage in the umbrella policy. The court noted that the provisions of the umbrella policy required Twin City to indemnify the insured for ultimate net loss in excess of the underlying limit, which was defined as “the amount of applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance Policies.... ” The Twin City policy required the named insured to maintain each policy described in the declarations section in full effect during the term of the umbrella policy.
The court stated that the employer’s reduction of the UM coverage limits in the underlying policy constituted a violation of that provision. The umbrella policy provided that failure to maintain the underlying insurance policies would not invalidate the Twin City policy. Instead, Twin City would^ only be liable to the extent it would have been liable had the underlying UM limit been maintained. Therefore, the court held that, inasmuch as Twin City’s threshold coverage could not be lowered by the insured’s failure to maintain its UM underlying insurance, Twin City would only be required to pay damages in excess of the $500,000 threshold under the UM coverage of its umbrella policy.
Mr. Dupree argues that the execution of the incomplete UM waiver form in the Chicago policy and the fact that the plaintiff himself did not personally, lower the underlying UM coverage in the First Horizon policy clearly distinguish the present case from the facts in Washam, supra. He further contends that these facts are indicative of genuine issues of material fact sufficient to preclude summary judgment. LSA-C.C.P. Art. 966. We disagree.
The waiver form signed by the plaintiff has no bearing upon the requirement of the Chicago umbrella policy that the underlying limits be exhausted before its coverage becomes applicable. To the contrary, the form concerns only the upper limits of the UM coverage available under the Chicago policy once the underlying limits requirement has been satisfied. LSA-R.S. 22:1406(D)(l)(a) provides that, in the absence of a written rejection of UM coverage or selection of lower limits, the UM coverage will be equal to the limits of bodily injury liability in the policy. The three options set forth in Chicago’s waiver form specifically arise from this statute— the insured could elect to have (1) UM coverage equal to the bodily injury limits; (2) UM coverage lower than the bodily injury limits; or, (3) no UM coverage. None of these options permitted the plaintiff to *1230 alter the policy’s requirement that the insured must maintain underlying primary coverage, nor did these options reduce the threshold at which UM coverage under the umbrella policy would take effect. The present situation here is no different from that presented, in Washam, where the insured had not signed a written waiver or reduction of UM coverage with respect to the umbrella policy.
Consequently, we find the waiver form to be totally irrelevant to the issue presently before the court. We acknowledge that the form may have some bearing on other issues, such as the amount of UM coverage available under the umbrella policy once the threshold of the Chicago policy is reached, if it is, and any cause of action brought by the plaintiff against his insurance agent. However, none of these issues are before the court at this time. Therefore, further discussion of this document is not required.
Nor is it of any avail to the plaintiff that he did not personally lower the underlying UM coverage. The plaintiff contends that the evidence will show that he never signed any document electing to decrease his UM coverage to $25,000 under the First Horizon policy. However, the plaintiff, by his actions in injecting himself into an existing liability policy, accepted the policy as written. Plaintiff became an insured under the policy as it existed when he became an insured, and he was subject to all of the policy’s terms and conditions, including those terms and endorsements relating to UM coverage. By the time the plaintiff was added to the First Horizon group policy, the UM coverage had already been reduced to $25,000 by a representative of the group. At no point did “his” UM coverage under that policy exceed $25,000. Consequently, the plaintiffs argument that his UM coverage was “decreased” without his knowledge is meritless.
After examination of the Chicago policy, we find that the relevant provisions in that policy are substantially identical to those in the policy in the Washam case. In both policies, the insurer under the umbrella policy is obligated for the ultimate net loss in excess of the underlying limit.[1] Here and in Washam, the policies also use the same basic definition for “underlying limit.”[2]
The schedule of underlying insurance in each policy stated that there was underlying insurance with a combined single limit of $500,000. Further, both policies had provisions which required the named insured to maintain each policy described in the declarations section in full effect during the currency of the umbrella policy.[3]
Based upon the similarities in the policies, we find that the Supreme Court’s basic reasoning in Washam is controlling. The First Horizon and Chicago insurance policies are separate and distinct contracts *1231 which create separate and unrelated obligations. The plaintiff contracted with Chicago for coverage for losses in excess of $500,000. Had the UM limits in the First Horizon policy been $500,000, as was represented to Chicago, the Chicago policy would not have provided coverage until total damages reached an amount in excess of $500,000.[4] The threshold of Chicago’s coverage is not lowered, and its obligation is not enlarged, because the plaintiff had not, in fact, secured the amount of underlying insurance asserted on the declarations page of the umbrella policy.
For the above reasons, the writ is made peremptory. The motion for summary judgment in favor of Chicago is granted. The case is remanded to the trial court for further proceedings. Costs are assessed to the plaintiff.
WRIT MADE PEREMPTORY; MOTION FOR SUMMARY JUDGMENT GRANTED; REMANDED FOR FURTHER PROCEEDINGS.

. Chicago’s policy provides that "... the total limit of the company’s liability for any one occurrence shall be the ultimate net loss resulting therefrom in excess of the underlying limit and then only up to the amount stated in the declarations as the occurrence limit; ...”

. Chicago’s policy defines "underlying limit" as:
(a) the amount of the applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance less the amount, if any, by which an aggregate limit of such insurance has been reduced by payment of loss; and
(b) In addition to the amount applicable in paragraph (a), the amount of any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributing, excess or contingent (except insurance purchased to apply in excess of the sum of underlying limits described in paragraph (a), or the retained limit, and the limit of liability hereunder; or
(c)If the insurance afforded by the underlying insurance policies stated in the Schedule of Underlying Insurance is inapplicable to the occurrence, the amount stated in the declarations as the retained limit, or the amount of other insurance stated in paragraph (b), whichever is greater.
The limits of liability of any underlying insurance policy stated in the Schedule of Underlying Insurance shall be deemed applicable irrespective of (1) any defense which the underlying insurer may assert because of the insured’s failure to comply with any condition of the policy subsequent to an occurrence, or (2) the inability of the underlying insurer to pay by reason of bankruptcy or insolvency. [Emphasis theirs]

.Chicago’s policy provides:
Maintenance of Underlying Insurance. Each policy described in the declarations, including renewals or replacements thereof, not more restrictive in coverage, shall be main *1231 tained in full effect during the currency of this policy, except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences taking place during the period of this policy. Failure of the named insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the company shall be liable only to the extent that it would have been liable had the named insured complied therewith.
The named insured shall give the company written notice as soon as practical of any change in the scope of coverage or the amount of limits of insurance under any underlying insurance and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer’s liability.

. Paragraph O of the "Conditions” section of the Chicago policy provides that the policy was issued "in reliance upon the truth” of the representations contained in the declarations.