614 So.2d 792 (1993)
Michael D. MOSLEY, Plaintiff-Appellant,
v.
DAIRYLAND INSURANCE COMPANY, et al., Defendants-Appellees.
No. 24,268-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
Rehearing Denied March 25, 1993.
*794 Bobby L. Culpepper, Jonesboro, for plaintiff-appellant, Michael D. Mosley.
Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for defendants-appellees, Dairyland Ins. Co., Becky R. Baker and Mary S. Hinton.
Mayer, Smith & Roberts by David F. Butterfield, Shreveport, for defendant-appellee, Liberty Mut. Ins. Co.
Davenport, Files & Kelly by Lavalle B. Salomon, Monroe, for defendant-appellee, American Ins. Co.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
LINDSAY, Judge.
The issue in this action is whether there was a valid rejection of uninsured/underinsured motorist (UM) coverage in both the primary automobile insurance policy and an excess umbrella policy. The trial court granted summary judgment in favor of the UM insurers finding a valid rejection of coverage in both policies. We affirm.

FACTS
Plaintiff, Michael Mosley, filed this action for damages suffered in an automobile accident that occurred on April 30, 1986. Mosley was driving a 1984 Ford pick-up truck registered in the name of Remco Drilling and Fabricating, Inc. ("Remco"). He was traveling north on the Mansfield Road in Shreveport, Louisiana, when he was struck from the rear by a 1977 Oldsmobile Cutlass driven by Becky R. Baker ("Baker") and owned by Vernon Hinton and/or Mary S. Hinton ("the Hintons"). Mosley's action included, as defendants, Liberty Mutual Insurance Company, the insurer of the pick-up truck, and Southern American Insurance Company, the commercial excess carrier for Remco and Mosley Well Service.[1]
Motions for summary judgment were filed by Liberty Mutual, Southern American, and the plaintiff seeking a determination of the validity of the rejections of UM motorist coverage by Mosley Well Service and Remco. After finding that there were no material issues of fact and that the rejections of UM coverage were valid, the trial court granted the summary judgment *795 motions of Liberty Mutual and Southern American.[2]

SUMMARY JUDGMENT
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Article 966; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The burden of proof in a motion for summary judgment is upon the mover to establish that there are no genuine issues of material fact. Schroeder, supra; Vermilion Corp., supra. Only when reasonable minds must inevitably concur is a summary judgment warranted; any doubt should be resolved in favor of a trial on the merits as the summary procedure should be used cautiously and sparingly. Ouachita National Bank v. Palowsky, 570 So.2d 114 (La.App. 2d Cir.1990).
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder, supra, citing GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711 (5th Cir.1985) and McCrae v. Hankins, 720 F.2d 863 (5th Cir.1983).

VALIDITY OF THE LIBERTY MUTUAL REJECTION
As found by the trial court there are no material issues of fact surrounding the question of the rejection of UM coverage. At the time of the accident in 1986, the vehicle operated by Mosley was primarily insured for liability purposes by Liberty Mutual. This policy's history dates from June 1, 1980.
Liberty Mutual had insured Mosley Well Service and Remco since June 1, 1980. Mosley Well Service and Remco were two closely-held family corporations of which Robert E. Mosley, Jr. was the chief executive officer and majority stockholder. The corporations were insured under separate, but identical, Liberty Mutual policies until June 1, 1983. By this time Remco was effectively out of business with its equipment and vehicles being used by Mosley Well Service. Beginning June 1, 1983, and annually thereafter, Liberty Mutual issued one common policy for Mosley Well Service and Remco. That each policy was considered a renewal from the previous year is indicated in the lower left hand corner of the Declarations Page.
The document rejecting UM coverage was attached to the common policy issued for June 1, 1985, through June 1, 1986. This rejection document is dated July 7, 1982, at which time Liberty Mutual was still issuing separate policies to the corporations. The rejection form lists as the name of the insured both "Remco Drilling & Fabricating & Mosley Well Service." It then states their respective addresses as shown on the policies in effect for the period of June 1, 1982 to June 1, 1983. The document is signed "R.E. Mosley, Jr."
Plaintiff has alleged that the Liberty Mutual rejection form is invalid in twenty-seven aspects. Most of plaintiff's arguments can be summarized into three main points: the format of the rejection is defective; Robert Mosley had no authority to execute the rejection; and the rejection was not applicable to the policy in effect on the date of the accident.
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. LSA-R.S. 22:1406; Roger v. Estate of Moulton, 513 So.2d 1126 (La. 1987); Breaux v. Government Employees Insurance Company, 369 So.2d 1335 (La. 1979). The object of UM insurance is to promote full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco *796 Insurance Companies, 585 So.2d 534 (La.1991); Johnson v. Fireman's Fund Insurance Company, 425 So.2d 224 (La. 1982).
The Louisiana Supreme Court has held that LSA-R.S. 22:1406 is to be liberally construed to carry out the objective of providing recovery for those injured through no fault of their own. Roger, supra; Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La. 1982). UM coverage will be read into any automobile policy unless validly rejected. Roger, supra. Because UM coverage is read into every policy, a rejection must be expressed clearly, unambiguously and unmistakably. Henson, supra; Roger, supra; Giroir v. Theriot, 513 So.2d 1166 (La.1987).
The insurer has the burden of proving that a rejection of UM coverage has been legally perfected. Henson, supra; Roger, supra; Young v. Shelter Insurance Company, 604 So.2d 199 (La.App. 2d Cir.1992), writ denied, 607 So.2d 559 (La. 1992).

Issues of Defective Form

A. Policy Numbers
The plaintiff attacks the rejection form on the basis that it does not specifically list the Liberty Mutual policy numbers to which it related.
A rejection of UM coverage was found valid where the form contained no policy number and no reference to any policy of insurance in Schwoch v. Sutor, 559 So.2d 552 (La.App. 2d Cir.1990). There were four Liberty Mutual policies involved, one of which provided coverage to the insured in Louisiana. The court noted that inclusion of the policy number on the rejection form was not necessary as the rejection form clearly rejected UM coverage as to the one policy which, absent a valid rejection, would provide coverage in Louisiana.
In the present case, at the time the rejection form was executed there were two policies of insurance that provided coverage in Louisiana, one issued to Remco and one issued to Mosley Well Service. (The plaintiff does not allege that either company had more than one policy with Liberty Mutual on July 7, 1982.) "Remco Drilling & Fabricating & Mosley Well Service" appear in the blank for "Name of Insured" on the rejection form. (As previously noted, their respective addresses are found in the address blank.) Inasmuch as each of these companies had only a single policy to which the UM rejection could be applied, it is obvious that the rejection form could only apply to those two policies. Thus, the lack of a policy number on the rejection form is irrelevant.

B. UM Coverage Options
The plaintiff also attacks the format of the rejection, contending that it is confusing as to the option of choosing UM coverage lower than the liability limits and that Robert E. Mosley, Jr., did not make a "meaningful selection" of coverage.
In Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992), the Louisiana Supreme Court held invalid a rejection of UM coverage in an umbrella insurance policy where the application form did not offer the option of selecting UM limits lower than the liability coverage and failed to inform the insured of that option. The court in Tugwell adopted the Third Circuit's interpretation of LSA-R.S. 22:1406(D) as set forth in Uhrich v. National Fire Ins. Company, 569 So.2d 1062 (La.App. 3d Cir.1990), writ denied, 572 So.2d 96 (La.1991). The Supreme Court stated:
The UM statute provides that UM coverage in an amount equal to the liability limits is automatic unless such coverage is completely rejected or the lower limits are selected. The statute thus provides the insured with three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower than those limits, or no UM coverage. A rejection on a form that prohibits the insured from choosing limits below liability coverage or which automatically chooses a certain lower amount for the insured, does not meet the statutory requirements because *797 it forecloses options available to the insured by law.
Tugwell, 609 So.2d at 198.
The Liberty Mutual form in the present case provided the following options:
I accept Uninsured Motorists Coverage at full policy Bodily Injury limits.
I hereby reject your offer of Uninsured Motorists coverage.
Please afford Uninsured Motorists coverage with limits lower than my policy Bodily Injury Limits, specifically:

__1,000,000 __300,000 __100,000 __25,000
__ 500,000 __250,000 __ 50,000 __Financial
 Responsibility
 Limits

Under Tugwell, the insurer is required to provide the insured with three options of UM coverage. As shown above, the Liberty Mutual form provided all three options.
Furthermore, Robert E. Mosley, Jr., rejected UM coverage. Although he testified in his deposition that he did not recall the agent discussing UM coverage options, the form clearly presents the options in such a way that a reasonable person could understand them. Mr. Mosley also testified that he went over the rejection form with his insurance agent, he knew he was rejecting UM coverage, and he was trying to save as much premium money as he could on the policies.

Application of UM Rejection to Policy in Effect on the Date of the Accident
The plaintiff also asserts that the Liberty Mutual form is invalid because the policies issued subsequently to the original policies were not renewal or substitute policies and thus required a new written rejection of UM coverage.
LSA-R.S. 22:1406 provides, in part, that a prior rejection of UM coverage continues in a renewal or substitute policy.
The difference between a "renewal" policy and a "substitute" policy was explained by the Third Circuit in Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241 (La.App. 3d Cir.1991):
La.R.S. 22:636.1(A)(5) defines a "renewal" policy as one issued and delivered to replace "at the end of the policy period" a policy previously issued and delivered by the same insurer. A renewal can therefore occur only at the end of the policy period it renews; it is not a renewal if the second issuance occurs after the end of the first policy period. A renewal contemplates uninterrupted coverage.
....
The distinction between a substitute and reinstated policy is given in 18 Couch on Insurance 2d §§ 69.1-69.3, Revival and Reinstatement. If there is coverage and an agreement is made for a different coverage, there is a substitution of policies.
Plaintiff argues that the addition of Remco as a named insured under the Mosley Well Service policy[3] on June 1, 1983, constituted a material change in the policy, thus requiring a new rejection of UM coverage.
Plaintiff relies on the First Circuit's decision in Tully v. Liberty Mutual Fire Insurance Company, 516 So.2d 435 (La.App. 1st Cir.1987). Mr. Tully initially opted for liability limits of $25,000 and UM limits of $10,000 for his automobile. Shortly after his marriage, Mr. Tully added his wife as a named insured and her automobile to his insurance policy. Liability coverage was increased to $300,000 for both cars. The First Circuit noted that the subsequent policy issued by Liberty Mutual was not a renewal or substitute policy within the meaning of LSA-R.S. 22:1406(D)(1)(a); the addition of another insured and that new insured's vehicle cannot be made and still have the policy considered a renewal or substitute policy. The appellate court agreed with the trial judge that the resulting policy was a new policy and that it was necessary for the insurer to obtain a new waiver or selection of lower limits of UM coverage.
The present case is distinguishable. In the Tully case, the plaintiff added his new wife and her vehicle to his coverage, neither *798 of which had been previously covered by the insurer. He also increased the policy limits. Clearly, under those circumstances a new policy had been issued. However, in the present case, the only thing that changed when the coverage of Remco and Mosley Well Service was combined was the insurance document itself. Everything elsethe coverage and the insuredsremained the same, as did the intent of the insureds to not carry UM coverage.
Furthermore, Liberty Mutual argues that Remco and Mosley Well Service were practically the same entity at the time the rejection form was executed. In his deposition, Robert Mosley testified that Remco shut down its business for all practical purposes after 1982; while the corporation existed on paper, it had no physical existence.[4] Remco's assets had been stored at the Mosley Well Service yard. Remco had no employees and no revenues.[5] According to Robert Mosley, he continued insurance coverage for Remco out of an abundance of caution. Defendant also notes that the two policies were combined for the calculation of premiums and for rating experience.
Plaintiff also argues that one form cannot reject UM coverage for two separate policies of insurance. The liberal construction given the UM statute requires that statutory exceptions to the coverage requirement be interpreted strictly. Roger v. Estate of Moulton, supra. The supreme court held in Roger:
Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer.... This narrow reading of La. R.S. 22:1406(D)(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim of the negligent uninsured or underinsured motorist. [Emphasis added.]
Roger, 513 So.2d at 1132.
Plaintiff argues that Roger's "particular policy" language, strict statutory interpretation of exceptions to coverage, and the policies underlying Louisiana's uninsured motorist law require a separate rejection of UM coverage for each insurance policy. We disagree.
The court in Roger was called upon to determine whether a 1981 letter could operate as a rejection of UM coverage in Louisiana where the letter specifically rejected such coverage in Pennsylvania. The letter also expressed the insured's desire to cancel UM coverage in "any other state" that changed its laws in the future to allow such rejection. The policy in question had been written in 1974, at which time the insured could have rejected UM coverage in Louisiana. However, its attempt to do so was legally flawed and thus ineffective.
In the Roger case, the court found that the language in the letter was too imprecise and prospective to qualify as a valid rejection of UM coverage in this state. It was also ineffective to "revive" the invalid 1974 rejection of UM coverage in Louisiana. Thus, the court was primarily concerned with identifying the UM rejection with a specific or particular policy in this state as opposed to the sort of general rejection upon which the insurer sought to rely.
Consequently, we do not interpret Roger as prohibiting the use of one form to reject UM coverage for two policies under the circumstances of this case.
Therefore, we find no merit to this argument.

*799 Robert Mosley's Authority To Sign UM Rejection

Plaintiff argues that Robert E. Mosley, Jr., lacked the proper authorization to execute the rejection of UM coverage on behalf of Remco and Mosley Well Service.
Under Louisiana law, UM coverage is required in any automobile policy covering vehicles principally garaged in Louisiana unless an insured rejects in writing the coverage or selects lower limits. Any document signed by the named insured or his legal representative can effectively reject UM coverage in accordance with LSA-R.S. 22:1406. "Legal representative" as set forth in LSA-R.S. 22:1406 requires the waiver to be by one who has the authority granted by the insured to act for the insured.
Robert Mosley is the president and majority stockholder of Mosley Well Service, Inc., which is a closely-held family corporation. The company was incorporated in 1973 and has one other corporate officer, Tommy Mosley, Robert's brother, who is the vice-president, secretary-treasurer, and a minority stockholder. There are only two other stockholders: Dennis and Ricky Mosley, who are brothers of Robert and Tommy. Robert and Tommy Mosley serve as the corporation's two-member board of directors. The Articles of Incorporation give Robert Mosley, as president, the authority to take whatever action is appropriate to maintain the operation of the corporation.
Additionally, Robert Mosley was the president and majority stockholder of Remco Drilling and Fabricating, Inc., also a small family-owned corporation. Remco was incorporated in 1976; Robert Mosley and his sister, Betty Warren, were the corporation's only officers, directors and shareholders. (He owned ninety percent of the stock while she owned the remaining ten percent.) Remco was dissolved in 1988 and merged into Mosley Well Service. Remco had no separate physical existence from approximately 1982 until its eventual dissolution.
As chief executive officer and majority stockholder, Robert Mosley had an active role in the day to day affairs of the corporations. In his deposition, Robert Mosley testified that no formal stockholder meetings were held and that most of the director meetings were informal. As to Mosley Well Service, he and Tommy would meet at least once a week to discuss corporate matters. Both Robert and Tommy were involved in decisions regarding insurance. The two brothers would discuss and decide insurance matters, although Robert Mosley had the final decision.
Plaintiff emphasizes the fact that there was no corporate resolution expressly authorizing Robert Mosley to reject UM coverage. However, there was apparently no corporate resolution authorizing him to procure insurance coverage. Corporate resolutions were issued only when the corporation sought financing, and these were issued because the lenders required resolutions before they would advance money to the corporation. The waiver of UM coverage by a president of a corporate insured does not require a resolution of the board of directors authorizing such waiver to be valid. Thibodeaux v. Burton, 538 So.2d 1001 (La.1989). See also Tapia v. Ham, 480 So.2d 855 (La.App. 2d Cir.1985), writ denied, 484 So.2d 138 (La.1986); Delaune v. State Farm Mutual Auto Ins. Co., 529 So.2d 1289 (La.App. 3d Cir.1988); Mouton v. Guillory, 494 So.2d 1374 (La.App. 3d Cir.1986).
Randazzo v. Segura, 514 So.2d 469 (La. App. 3d Cir.1987), involved a very similar situation. Ted Hornback, the president and majority stockholder of a corporation, signed a rejection of UM coverage on behalf of the corporation. The plaintiff argued that the rejection was invalid because Hornback signed in his individual capacity. In the alternative, plaintiff argued that the corporation had not granted Hornback the authority to sign the rejection document. "We cannot see why such a rejection could not be made by the principal stockholder and president of the corporation when all of the shareholders [there were two others in addition to Hornback] were present at the meeting with the insurance agent and acquiesced in the rejection." Randazzo, supra, at 470. The Third Circuit found *800 that as president, Ted Hornback was an agent for the corporation and could thus reject UM coverage on behalf of the corporation. In addition to this finding of express authority, the court found that the corporate president was also clothed with apparent authority to bind the corporation. The corporation always transacted its business through its president, who was also the principal stockholder. Thus, it was not unreasonable for the insurance company to assume that Hornback had the authority to reject UM coverage on behalf of the corporate insured.
Robert Mosley had both express and implied authority to reject UM coverage for Remco and Mosley Well Service. Decisions involving insurance arise in the normal, day to day operation of a business. As a corporation cannot act alone, these decisions are made by its officers and directors. In particular, we note that the Articles of Incorporation of Mosley Well Service expressly gave Robert Mosley as president the authority to take any action necessary to maintain the corporation's operation.
Both of Mosley Well Service's officers, who are also its directors and owners of a majority of its stock, were involved in the decision to reject UM coverage. Robert Mosley, in his deposition, stated that he and his brother Tommy had decided to reject UM coverage as a way of cutting business costs. Mosley testified that no checks were issued unless both he and his brother indicated their approval by initialing the invoice. Although both he and Tommy could write checks on behalf of the corporation, it was usually Tommy who wrote the checks. Insurance premiums were paid with Tommy's approval. As to Remco, Robert Mosley apparently wielded comparable power on insurance matters in his position as its president and majority shareholder.
Thus, the rejection form executed by Robert Mosley is not invalid for want of his authority to act for the corporations.

Other Alleged Defects
The plaintiff also argues a variety of other alleged defects as to the rejection of UM coverage under the Liberty Mutual form. However, the plaintiff has failed to show, factually or legally, how any of these remaining alleged irregularities rendered the rejection invalid. Although we have considered each of these issues, we conclude that they are meritless and do not require further discussion.
Based on the foregoing, we affirm the trial court judgment granting summary judgment in favor of Liberty Mutual.

VALIDITY OF THE SOUTHERN AMERICAN REJECTION
LSA-R.S. 22:1406(D)(1)(a) requires UM coverage under any policy providing automobile liability insurance. Southern American Insurance Company v. Dobson, 441 So.2d 1185 (La.1983). The supreme court found this coverage mandated by the plain language of the statute and the public policy considerations underlying it. Excess automobile or umbrella liability insurance includes UM coverage in the same limits of liability unless such coverage is expressly rejected by the insured. Dobson, supra.
A policy expressly providing automobile liability coverage only in excess of required underlying coverage affords UM coverage only in excess of that same amount. Mohr v. State Farm Insurance Company, 528 So.2d 144 (La.1988); Washam v. Chancellor, 507 So.2d 806 (La. 1987); Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.1991), writ denied, 588 So.2d 100 (La.1991); Dupree v. Hill, 530 So.2d 1226 (La.App. 2d Cir.1988).
The vehicle driven by Mosley was insured by Southern American in the form of commercial umbrella liability coverage with a policy period of June 1, 1985, to June 1, 1986. The policy was issued to Mosley Well Service and Remco. Robert Mosley signed a UM endorsement form, rejecting UM limits that were higher than the limits provided by the primary automobile insurance listed in the policy schedule. The date at the bottom of the form signified as its effective date June 1, 1985.
*801 Plaintiff argues that the Southern American rejection is invalid and sets forth several reasons why the form is not in accord with LSA-R.S. 22:1406(D). We will deal with each of plaintiff's arguments separately.

Sufficiency of UM Coverage Waiver
The Southern American rejection form gave the insured two options regarding UM coverage. Option # 1 read:
I hereby reject Uninsured Motorists limits that are higher than those limits provided by the Primary Automobile Insurance listed in the Schedule of Underlying of this policy.
Option # 2 gave the insured this choice:
I desire higher limits for Uninsured Motorists Coverage. I hereby agree that the limit of coverage for Uninsured Motorists is equal to the limit of my Primary Automobile Liability Coverage as stated in the Schedule of Underlying of this policy.
I desire $_______ million additional limits not to exceed the limits provided by this policy. Additional premiums will be due.
Option # 1 allowed the insured to totally reject UM coverage under the excess policy. By its express terms, the Southern American policy is an umbrella or excess policy; its coverage is not triggered until the underlying policy limits are exhausted. See Dupree v. Hill, supra. The first option reflects the policy's excess nature; by choosing this option, the insured is rejecting any UM coverage under the excess policy.
The second option allowed the insured to select limits for UM coverage in an amount equal to the bodily injury limits of the primary policy, $750,000, or in amount up to the umbrella policy's limits of $5,000,000. This option affords the insured a choice of UM limits that are equal to or less than the Southern American policy's bodily injury limits. As stated previously, the Tugwell case holds that LSA-R.S. 22:1406 requires that the insured be given three options regarding UM coverage. The Southern American form provides the insured with these mandated options.

Date of Execution and Effective Date of Rejection
Plaintiff contends that the rejection form is invalid because it is not dated and provides no effective date. The date "6-1-85" appears at the bottom of the rejection form in the space designated "Effective _____". The date "Nov. 23, 1985" is stamped across the top of the form. As long as no rights have vested prior to the execution of the rejection, the rejection is effective from its signing. Cooper v. Barnes, 408 So.2d 378 (La.App. 1st Cir. 1981). Plaintiff's accident occurred on April 30, 1986. Thus, no rights to recovery vested or accrued prior to either the indicated effective date of June 1, 1985, or the date stamped at the top of the form, November 23, 1985.
This argument is meritless.

Execution of Rejection by Authorized Representative of Southern American
The plaintiff also contends that the document is not signed by an authorized representative of Southern American. In Alexander v. Allstate Insurance Company, 493 So.2d 677 (La.App. 2d Cir.1986), this court addressed this issue and held that LSA-R.S. 22:1406(D)(1)(a) contemplates action on the part of the insured in rejecting or selecting UM coverage and that action or approval by the insurer is not necessary. The insurer in Alexander did not endorse the policy. In the instant case, an authorized representative of Southern American likewise did not sign. The court in Alexander reasoned that UM coverage is created by statute, not by policy language, and that LSA-R.S. 22:1406 "provides a means by which the insured, unilaterally and without approval of the insurer, may elect to either reject or select lower limits of the statutory UM coverage." Alexander, supra at 678.
There is no merit to this argument.

UM Rejection's Failure to Refer to Policy of Insurance or Policy Number
The plaintiff argues that the form does not refer to a policy of insurance or *802 contain a policy number. As previously noted, in Schwoch v. Sutor, supra, the Second Circuit was faced with the same Liberty Mutual policy form involved in this case. The court concluded that the failure to indicate a policy number on the form did not invalidate the rejection. Of the four insurance policies issued to the insured in Schwoch, only one policy provided coverage in Louisiana. The court found that inclusion of the policy number on the rejection form was not necessary as the form clearly rejected UM coverage as to the one policy which, absent a valid rejection, would provide such coverage in Louisiana.
In the instant case, there was only one Southern American policy providing insurance coverage to Remco and Mosley Well Service. The form clearly rejects UM coverage as to this one policy.

Robert Mosley's Authority to Reject UM Coverage
Plaintiff argues that Robert Mosley lacked the proper authorization to execute the rejection of UM coverage under the Southern American policy on behalf of Remco and Mosley Well Service. However, for the reasons set forth in our discussion of Robert Mosley's authority to reject UM coverage under the Liberty Mutual policy, we find that the rejection form executed by Robert Mosley under the Southern American policy is not invalid for want of his authority to act for the corporations.
Based on the foregoing, we find that the trial court properly granted the summary judgment in favor of Southern American.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed, at appellant's cost.
AFFIRMED.
BROWN, J., dissents in part with written reasons.
BROWN, Judge, dissenting in part.
As stated by the majority, UM coverage is provided by statute and embodies a strong public policy. Its object is to provide full recovery for innocent victims injured by an uninsured or underinsured motorist. This strong public policy requires UM coverage to be included in every automobile insurance policy unless rejected in strict compliance with the law.
As the supreme court noted in Roger, "Public policy, legislative intent and strict statutory interpretation of exceptions to coverage, all require clear, unmistakable rejection.... The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment." Roger, 513 at 1131-32 (citations omitted) (emphasis added).
The majority found that the addition of Remco as a named insured under the Mosley Well Service policy did not constitute a material change in the policy and thus a new rejection was not required. I disagree. Remco and Mosley Well Service continued to have separate and distinct legal personalities until their merger in 1988. The vehicle involved in the accident, a 1984 Ford truck, had Texas registration which listed Remco as the truck's owner. The accident report also reflected Remco as the owner of the truck. The combination of the two policies into one in 1983 did not result in a merger of the two corporate entities into one insured. Remco was added as an additional insured to the policy issued to Mosley Well Service.
This combination constituted a material alteration and required a new rejection of UM coverage by the named insureds. Public policy, legislative intent and strict statutory interpretation of exceptions to coverage require clear, unmistakable rejection. The law imposes UM coverage in Louisiana regardless of the language of the policy, the intentions of the parties or the presence or absence of a premium charge or payment. Roger v. Estate of Moulton, supra at 1131-32.
Furthermore, the "particular policy" language of Roger, coupled with strict statutory interpretation of exceptions to coverage *803 and the policies underlying Louisiana's UM law requires a separate rejection of UM coverage for each insurance policy.
A rejection of UM coverage was found valid where the form contained no policy number and no reference to any policy of insurance in Schwoch v. Sutor, 559 So.2d 552 (La.App. 2d Cir.1990). However, Schwoch is to be distinguished from the instant case. The court concluded that failure to indicate a policy number on the form did not invalidate the rejection in Schwoch. There were four Liberty Mutual policies involved, but only one of them provided coverage to the insured in Louisiana. The court noted that inclusion of the policy number on the rejection form was not necessary as the form clearly declined UM coverage as to the one policy which would provide coverage in Louisiana. The other three policies involved in Schwoch did not provide coverage in Louisiana.
Contrary to the situation in Schwoch, at the time the rejection form was executed in this case, there were two policies of insurance that provided coverage in Louisiana, one issued to Remco and one issued to Mosley Well Service. "Remco Drilling and Fabricating" and "Mosley Well Service" appear in the blank for "Name of Insured" on the rejection form. However, the form in no way indicates that it was meant to reject UM coverage for a particular policy, much less for two particular policies. No policy numbers appear on the form. The prefatory language at the top of the form refers several times to "your policy"; there is nothing to indicate that the form was intended to relate to two separate policies of insurance. (emphasis added).
For the foregoing reasons, I respectfully dissent. In all other respects I concur with the majority's opinion.

APPLICATION FOR REHEARING
Before SEXTON, LINDSAY, HIGHTOWER, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] Mosley sued Baker; the Hintons; Dairyland Insurance Company, the insurers of the Cutlass; State Farm Mutual Insurance Company, insurers of plaintiff's automobile; Farm Bureau Insurance Company, insurers of plaintiff's truck; and Liberty Mutual, insurer of the pick-up truck driven by plaintiff at the time of the accident. Southern American, the commercial excess insurer of Mosley Well Service and Remco, was added by an amending and supplemental petition. All of these defendants were sued for damages sustained as a result of the collision. Mosley also named as defendant Mosley Well Service, Inc.; Mosley claims that the company is liable to him for failure and refusal to allow him to obtain medical treatment and for requiring him to work and aggravate his medical condition.

The automobile accident occurred during the course and scope of Mosley's employment with Mosley Well Service. Liberty Mutual intervened in its posture as worker's compensation carrier for Mosley Well Service, seeking to recover worker's compensation benefits paid to and medical expenses paid on behalf of the plaintiff.
[2] State Farm and Farm Bureau, the plaintiff's automobile insurance carriers, have been dismissed from the lawsuit, leaving as defendants Baker, the Hintons, Dairyland, Mosley Well Service, Inc., and the appellees, Liberty Mutual and Southern American.
[3] When the policies were combined into one policy for both corporations, the remaining policy had the base number of the Mosley Well Service policy.
[4] Robert Mosley testified that Remco was dissolved in 1988 and that the two corporations were merged at that time.
[5] Robert Mosley also testified that Remco had no vehicles at this time because they had been sold to Mosley Well Service in 1982. Therefore, he was unable to explain why the 1984 pick-up truck the plaintiff was driving at the time of the accident had been registered in Remco's name. However, this was immaterial because, under the Liberty Mutual policy, any vehicle, regardless of how titled, was covered by the policy.