538 So.2d 1001 (1989)
Raphael THIBODEAUX and his Wife, Alice Thibodeaux
v.
David M. BURTON, ABC Insurance Company and XYZ Insurance Company.
No. 88-C-1566.
Supreme Court of Louisiana.
January 30, 1989.
Rehearing Denied March 2, 1989.
*1002 Thomas Anzelmo, Sr., Michael Sistrunk, Dermot McGlinchey, McGlinchey, Stafford & Mintz, New Orleans, for applicants.
Thomas Breslin, Jr., Arthur Miller, Susan Chehardy-Williams, Jefferson, Charles LaBarre, New Orleans, Wendell Gauthier, Gauthier, Murphy, Sherman, McCabe & Chehardy, Metairie, Fred Butler, Leslie Lanusse, Adams & Reese, New Orleans, for respondents.
DIXON, Chief Justice.
Plaintiffs Raphael Thibodeaux and his wife Alice Thibodeaux filed suit against several defendants as a result of an automobile accident that left him a quadraplegic. Plaintiffs later amended their petition to include Pacific Employers Insurance Company as a defendant in its capacity as the excess insurer of plaintiff's employer, Barriere Construction Company. Pacific failed to answer timely and after the requisite delays, the plaintiffs obtained a two million dollar default judgment against it. After the confirmation of the default judgment, *1003 Pacific petitioned for a new trial. The trial court refused to grant a new trial and Pacific appealed to the Fifth Circuit. That court upheld the judgment of the lower court granting the default judgment and refusing a new trial. Thibodeaux v. Burton, 525 So.2d 1103 (La.App. 5th Cir.1988). Pacific then applied for writs in this court, which were granted. We now reverse the judgments of the lower courts and remand the case to the trial court for a new trial.
Plaintiff was an employee of Barriere Construction Company, and was working the night shift on construction work in progress on Veterans Boulevard. The construction site was marked by a flashing yellow sign which instructed traffic to detour out of the lane where the construction was taking place. The sign was attached to a trailer which was connected to a pickup truck owned by Barriere. On the night of the accident, David Burton, an intoxicated driver driving his father's van, collided with the sign. The force of the collision propelled the pickup truck forward, striking the plaintiff and causing the serious injuries. Police investigating the accident gave Burton a field sobriety test, which he failed. He was later taken to the police station where his blood alcohol level was found to be .20%.
On November 20, 1986, Mr. and Mrs. Thibodeaux filed suit against Burton, ABC Insurance Company and XYZ Insurance Company. On December 29, 1986, plaintiffs took the deposition of Carolyn Hornosky, the safety director of Barriere. In response to a subpoena duces tecum she delivered to plaintiffs' counsel a copy of the insurance contracts in favor of Barriere, which included an underlying policy issued by National Union Fire Insurance Company, and an excess policy issued by Pacific. The Pacific policy provided coverage for liability over one million dollars, with a limit of two million dollars. The insured, Barriere, was to maintain underlying coverage for the first one million dollars of liability. While the underlying policy with National did provide one million dollars worth of coverage for general liability, Barriere limited the uninsured motorist coverage in the National policy to $20,000.
On January 12, 1987, plaintiffs' counsel telephoned Suzette Bertucci, an employee of Barriere's insurance agent, and was advised that Barriere had rejected uninsured motorist coverage in its excess policy with Pacific. Nonetheless, on January 12, 1987, plaintiffs filed a first supplemental and amended petition for damages, substituting State Farm Mutual Insurance Company, Burton's insurer, for ABC Insurance Company, and National and Pacific for XYZ Insurance Company, alleging that Burton was under-insured, and that they provided uninsured motorist coverage. Pacific was served through the Secretary of State on January 19, 1987. On February 13, 1987, a default judgment was confirmed against Pacific for the full limits of its two million dollar excess policy based on the policy that the plaintiffs had received in response to the subpoena duces tecum. That policy did not contain the rejection of uninsured motorist coverage. Three hours after the confirmation of the default judgment, Pacific filed a motion for extension of time within which to plead.
On February 23, 1987, Pacific filed a timely motion for a new trial. A hearing was held in which Pacific claimed that it should be granted a new trial due to the deficiencies in the plaintiffs' prima facie case, as well as on the grounds that the default judgment was obtained through the ill practices of the plaintiffs' attorney in securing a default judgment against Pacific when he was advised that it did not provide uninsured motorist coverage in the policy issued to Barriere due to its rejection of such coverage. On July 17, 1987, the trial court denied the motion for a new trial; Pacific appealed to the court of appeal where the judgment was affirmed. Pacific then applied for writs in this court alleging several errors in the judgments of the lower courts.
Pacific makes several arguments in favor of the granting of a new trial. Its arguments attack both the prima facie case presented by the plaintiffs at the confirmation hearing as well as the conduct of the plaintiffs' counsel in securing the default judgment. Since we find that the trial *1004 judge abused his discretion in not granting a new trial, we pretermit discussion of the other issues.
For a plaintiff to obtain a default judgment, he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. Holmes v. Rachal, 525 So.2d 59 (La.App. 3rd Cir.1988); Booker v. Winding, 522 So.2d 1240 (La.App. 4th Cir.1988); Perrodin v. Zander, 441 So.2d 12 (La.App. 3rd Cir.1983). In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits. In the present case the plaintiffs attempted to establish their prima facie case by the introduction of the insurance policy issued by Pacific to Barriere. As mentioned above, that policy did not contain the written waiver of uninsured motorist coverage signed by the president of Barriere.[1] The officer who investigated the accident was also called to establish the cause of the accident. Finally, the plaintiffs presented medical reports and bills to prove the extent of Raphael Thibodeaux' injuries, as well as the testimony of his wife Alice.
Pacific has alleged several deficiencies in the prima facie case presented by the plaintiffs. First, Pacific alleges that the trial court erred in admitting the policy issued by it to Barriere since it was obtained as a result of a deposition in which it was not present or given notice. The deposition of Carolyn Hornosky was taken on December 29, 1986, before Pacific was a named defendant. Pacific claims that under C.C.P. 1450 the deposition cannot be used against it, and that the subpoena duces tecum which accompanied the deposition and the evidence that was derived from it are also inadmissible. This argument lacks merit because the policy belonged to the insured Barriere, and not Pacific.
Next, Pacific contends that the plaintiffs failed to present competent evidence of the medical condition of Mr. Thibodeaux and the extent of his injuries. Pacific contends that the evidence presented by the plaintiffs was hearsay and incompetent. The record shows that the plaintiffs presented the medical reports and bills at the confirmation hearing, as well as the testimony of Alice Thibodeaux to show the pain and suffering of her husband. Inasmuch as we find that the case must be remanded to the trial court for a new trial, we express no opinion on this issue.
Pacific next contends that the plaintiffs failed to establish with competent evidence that the truck in question was "in use" at the time of the accident. The policy issued by Pacific to Barriere provides in pertinent part:
"PERSONS OR ENTITIES INSURED
(d) Any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission, ..." (Emphasis added).
Pacific claims that the only evidence showing that plaintiff was using the truck was the hearsay testimony of the investigating officer and Alice Thibodeaux, neither of whom was a witness to the actual accident. The lower courts relied on Hellmers v. Department of Transportation and Development, 503 So.2d 174 (La.App. 4th Cir. 1987) in holding that the truck was "in use" at the time of the accident. Pacific claims that case is not controlling because in Hellmers there was testimony of actual witnesses as to the use of the vehicle. The vehicle in Hellmers was being used to block the highway as part of a warning system, much as the truck in this case was being used. In this case the evidence to establish *1005 the use of the truck consisted of the testimony of the arresting officer. Contrary to the assertions of Pacific, he testified as to what he saw before the accident as well as what he observed after the accident when he was investigating it. Therefore, the evidence presented by the plaintiffs was competent and not hearsay.
The only remaining issue is whether or not this evidence showed that the truck was "in use" at the time of the accident. The language of the policy does not limit coverage to situations where the vehicle is actually being operated, but instead uses the broader concept of "actual use." In this case, the vehicle was being used as part of a warning system to prevent oncoming traffic from endangering the people working at the construction site. Plaintiff was the operator of the truck and the sign, and while he was not actually operating the vehicle at the time of the accident, the vehicle was in actual use under the language of the policy since the lights were operating and the truck was part of a barricade erected to detour traffic.
Pacific also argues that the lower courts erred in casting it in judgment for damages exceeding $20,000 instead of damages over $1,000,000 as the policy states. As Pacific states, its policy requires Barriere to maintain an underlying policy for the first $1,000,000 of liability. Barriere did not meet this requirement for its UM coverage, since it elected to only maintain $20,000 worth of UM coverage in its policy with National. This court addressed an identical issue in the case of Washam v. Chancellor, 507 So.2d 806 (La.1987). In that case, plaintiff's employer selected lower limits in its underlying policy than those required by the excess policy. As in the case at bar, the excess policy provided that in the event the insured failed to maintain the requisite underlying policy, the excess policy would not be invalidated, but the insurer would only be liable to the extent that it would have been liable if the insured had maintained the underlying policy limits. In Washam we held that the excess insurer is only liable for damages that exceed the limits of the underlying policy as the insured should have maintained it. See also Mohr v. State Farm Insurance Company, 528 So.2d 144 (La.1988). In the present case, the insured, Barriere, was required by the language of the policy to maintain $1,000,000 worth of underlying coverage, which it did not do. In the event that Pacific is found liable at the new trial, its liability will not begin until the damages reach $1,000,000.
Pacific's final contention is that the trial court should have granted a new trial in the interest of justice. Pacific claims that the trial court abused its discretion in not granting the new trial. While Pacific argues that there are peremptory grounds for the granting of a new trial under C.C.P. 1972, we find that the proper analysis of the granting of a new trial in this case necessitates an examination of C.C.P. 1973, which states that: "A new trial may be granted in any case if there is good ground therefor, except as provided otherwise by law." "New trials are granted in the interest of justice, and are left largely to the discretion of the trial judge." Succession of Robinson, 186 La. 389, 394, 172 So. 429, 430 (1937), but this discretion is not immune from appellate review. As we stated in Hardy v. Kidder, 292 So.2d 575, 578 (La.1974): "Although the trial judge has much discretion regarding applications for a new trial, in a case of manifest abuse the appellate court will not hesitate to set the trial court's ruling aside, or grant a new trial when timely applied for." Also, as stated in Hardy: "The trial judge's ruling is subject to review and is not final, and where an injustice is done and substantial rights are lost through mere technicalities, it is our duty to interfere. Such arbitrary and harsh rulings prolong litigation and do not end it, as is shown by the cases themselves." Supra at 578. This court is especially careful to review denials of a new trial in cases of default judgments. "With respect to cases, such as the one at bar, wherein a timely motion for a new trial is denied after the proper confirmation of a default judgment, this court has been particularly cautious in examining the circumstances underlying the judgment due to the general policy consideration, weighing in *1006 the defendant favor, that every litigant should be allowed his day in court." Lamb v. Lamb, 430 So.2d 51, 53 (La.1983).
In the present case, the trial judge was confronted with a timely motion for a new trial filed by Pacific. In that motion Pacific attached the written rejection of UM coverage signed by the president of Barriere. This waiver was not attached to the copy of the policy presented by the plaintiffs at the confirmation of the default judgment, but nevertheless such a waiver is conclusively presumed to be a part of the policy. R.S. 22:1406(D)(1)(a)(ii) provides:
"After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto." (Emphasis added).
The trial court was presented with serious allegations by Pacific that there was no liability on their part for any UM claims by the plaintiffs. The trial court was also presented with allegations that the plaintiffs' attorney was aware that the Pacific policy did not provide UM coverage. Pacific has alleged that this behavior by the plaintiffs' attorney is not revealing to the trial judge the substance of his telephone conversation with Barriere's insurance agent, in which she told him that there was a written rejection of UM coverage by Barriere, amounts to ill practices and is a violation of the Rules of Professional Conduct.[2] Concluding that the waiver presented new evidence, the trial court declined to give it any weight in deciding whether to grant the new trial. Both parties have presented arguments as to whether this waiver was new evidence or simply a part of the policy that was originally introduced into evidence at the confirmation hearing. Regardless of how this evidence is characterized, it presented to the trial judge a seriously contested issue which warranted the granting of a new trial. Counsel for plaintiffs has made a credible argument to the effect that the waiver is a defense that should have been pleaded by Pacific. Pacific, on the other hand, has argued that the waiver is not merely a defense, but is evidence of a lack of coverage on its part, which negates the prima facie case that the plaintiffs are required to prove. This conflict presented, at the very least, a "good ground" for which the trial court should have granted a new trial.
Counsel for plaintiffs seriously argues that he merely availed himself of the law on his clients' behalf when he confirmed the default judgment. Pacific failed to timely answer the petition and has presented no reasonable excuse for its failure. This court by no means endorses the practice of neglecting to file an answer. Plaintiff's injuries are obviously very serious. Pacific might have an absolute defense. Only after further proceedings will we be able to determine where justice lies. The interests of justice require a new trial.
In the case at bar the trial judge confirmed the default judgment on an incomplete record. While he did have the Pacific policy at the default confirmation, he did not have the complete policy. If the waiver had been before the trial judge at the confirmation hearing, he might have been able to determine whether there was coverage under the Pacific policy. In the absence of the waiver, the trial court made the only decision justifiable under the circumstances. However, when presented with the waiver at the hearing on the new trial, the trial court should have granted the motion of Pacific and conducted a new trial in which Pacific would be allowed to assert its defense of no coverage.
"When the record of a suit discloses enough to satisfy the court that the whole *1007 story of the case is not told, that essential facts have not been given in evidence, and important documents have been omitted, and that substantial justice cannot be done between the parties in the state of the record as filed here, the court will, in its discretion, in the interests of justice, remand the case." Muller v. Hoth, 105 La. 246, 29 So. 709 (1901).
For these reasons the ruling of the court of appeal denying the motion for a new trial is reversed, and the case is remanded to the trial court for a new trial consistent with the views expressed in this opinion. The costs of the confirmation of the default are taxed to the defendants; the costs of appellate review are taxed to the plaintiffs; all other costs to await the final determination of these proceedings.
LEMMON, J., concurs and assigns reasons.
CALOGERO, WATSON and COLE, JJ., dissent and assign reasons.
LEMMON, Justice, concurring.
The failure of plaintiff's attorney to inform the trial court of the possibility of a valid waiver was not shown to be deliberate misconduct. Nevertheless, the trial judge abused his discretion in refusing to grant a new trial after being presented with evidence that a valid waiver existed.
I also decline to join in the discussion of the effect of the insured's failure to maintain the requisite underlying policy. Since we have set aside the default judgment because of the improper denial of a new trial (the issue for which certiorari was granted), it is not necessary to address the issue of the underlying policy at this time. That issue is properly permitted to the new trial and any review of a judgment after the new trial.
CALOGERO, Justice, Dissenting.
For the reasons set forth in Justice Cole's dissenting opinion, I respectfully dissent from the majority's decision to set aside the default judgment completely and remand for a new trial. While I believe, for reasons discussed below, that a reduction in the amount of that judgment is appropriate, the judgment itself was validly obtained, there is no evidence of ill practice by plaintiff's counsel, and Pacific has offered no reason for its failure to timely appear and defend the suit.
I do believe, as noted by the majority, that if we were to affirm the default judgment, Washam v. Chancellor, 507 So.2d 806 (La.1987) would require us to reduce the amount of the award against Pacific. In Washam, we held that when the excess policy requires the insured to carry underlying liability coverage in a certain amount (here, one million dollars), and the insured carries underlying uninsured motorist coverage which is less than the required amount of liability coverage (here, $20,000 of underlying U.M. coverage was obtained), the excess carrier is only liable for U.M. coverage on the portion of the judgment which exceeds the amount of underlying liability coverage required by the excess policy. In this case, that would mean that Pacific is only liable for damages in excess of $1,000,000.
In footnote two of his dissenting opinion, Justice Cole suggests that the policy language at issue in this case may be distinguishable from the policy language at issue in Washam. The court of appeal seemed to reach a similar conclusion, 525 So.2d at 1105-06, although Washam was not cited in the appellate court opinion.
Having reviewed the policy language at issue in Washam and the policy language at issue here, I find no basis for distinguishing Washam. However, I must say that I now have doubts about whether Washam correctly resolved the issue of an excess carrier's U.M. liability when the insured does not maintain underlying U.M. coverage up to the limit of liability coverage required by the excess policy, doubts which encouraged me to question whether Washam was applicable in another recent case involving a similar policy. See Mohr v. State Farm Insurance Co., 528 So.2d 144, 150 (La.1988) (Calogero, J., dissenting.)
The excess policy at issue here (as well as the excess policies considered in Washam and and Mohr) stipulates that the *1008 insured must procure a certain amount of underlying liability insurance, and states that there will only be liability coverage in excess of that amount. Washam assumes that the excess policy's requirement of underlying liability coverage carries with it a requirement of underlying U.M. coverage in the same amount, even though the excess policy at issue in that case (as well as the policy involved here and the policy in Mohr) contained no express requirement that the insured maintain underlying U.M. coverage. This assumption seems questionable at best. If the excess policy requires underlying liability coverage but is silent as to underlying U.M. coverage, a strong argument can be made that the excess policy should "drop down" and provide U.M. coverage at whatever point the insured's underlying U.M. coverage (if any) is exhausted.
As Washam was recently decided by this Court, however, and absent a majority's willingness to reconsider that case, I acknowledge that it is controlling on the issue of the level at which the U.M. carrier's exposure begins in a case such as this one.
For these reasons, I respectfully dissent from the majority's decision to set aside the default judgment entirely. I would affirm that judgment, but order the $2,000,000 award against Pacific reduced to $1,240,000. ($2,240,000, the total amount of damages which the trial court found the plaintiff had sustained, minus $1,000,000, the amount of underlying U.M. coverage which, under Washam's interpretation of a similar excess policy, the insured was required to maintain).
WATSON, Justice, dissenting.
Defendant Pacific failed to answer plaintiffs' lawsuit and, as the majority notes, "has presented no reasonable excuse for its failure." A party who seeks to have a default judgment set aside must allege and prove good reasons for nonappearance and failure to timely plead. De Frances v. Gauthier, 220 La. 145, 55 So.2d 896 (1951); Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976). The defendant who fails to appear and defend a lawsuit is not entitled to have a default judgment set aside to allow a belated defense on the merits unless there was good reason for the nonappearance. None has been offered here. Instead, defendant has attempted to disparage and criticize the conduct of plaintiffs' counsel, which was simply a vigorous assertion of his clients' legal rights. The majority errs in substituting its discretion for the trial court's. Therefore, I respectfully dissent.
In addition, I join the excellent elaboration provided by Justice Cole in his reasons for dissenting.
COLE, Justice, dissenting.
I respectfully dissent.
Three conspicuous and indisputable facts emerge from the record before us. First, Pacific failed to appear to defend this action within the time prescribed by the Code of Civil Procedure. Second, by virtue of this failure to appear, a judgment by default was entered against Pacific for $2,020,000.00. Third, Pacific has failed to offer any explanation for its failure to appear. The first fact is obvious; the second, the amount of the judgment, is irrelevant. The third fact, however, should be dispositive.
In Succession of Rock v. Allstate Life Insurance Co., this Court clearly stated: "He who seeks to have a default judgment against him set aside must allege and prove he had good reasons for his nonappearance and failure to timely plead." 340 So.2d 1325, 1329 (1977) (citing DeFrances v. Gauthier, 220 La. 145, 55 So.2d 896 (1951)). The same rule should apply here. Pacific offers no reasons, good or otherwise, for its failure to appear or move for additional time in which to respond.
In lieu of an explanation of its own nonfeasance, Pacific offers a defense on the merits. It now alleges, after the entry of a default, that it should be given a second chance to litigate the issue of its liability under the policy. Pacific's claim that its excess insurance policy did not extend to uninsured motorist benefits would have been properly raised as a defense. The insurer bears the burden of proving UM *1009 coverage was waived. See Aramburo v. Travelers Insurance Co., 426 So.2d 260 (La.App. 4th Cir.1983). Pacific should not be allowed to avoid this judgment on the basis of a defense it failed to raise in a timely answer to the plaintiffs' petition. This was the essence of our holding in Succession of Rock. 340 So.2d at 1331. A plaintiff is not obliged to raise and argue the possible defenses of his opponent in proving up a default. State, Dept. of Health and Human Resources v. Beauchamp, 473 So.2d 323 (La.App. 1st Cir. 1985), writ denied 477 So.2d 1125.
Pacific further attacks the judgments of the trial court and the Court of Appeal by a serious accusation of "ill practice" on the part of the plaintiffs' attorney. This is bolstered by the unfounded accusation that counsel violated an ethical rule by failing to inform the trial court of his conversation with Suzette Bertucci prior to the entry of the default. Ms. Bertucci allegedly told plaintiffs' counsel the insured had waived UM coverage. This statement was contradicted by the policy documents obtained by the plaintiffs from the insured and which the majority properly found to be admissible in evidence.[1] Despite counsel's request, neither Bertucci nor Pacific supplied him with any documentation of the waiver in the month between the conversation and the entry of the default. Inaction on the part of Pacific is indeed a hallmark of this litigation.
Pacific also attacked the plaintiffs' prima facie case on the grounds it relied on incompetent hearsay evidence. This claim was pretermitted in part and rejected in part by the majority, but is without merit. In its holding, however, the majority indicates plaintiffs' counsel had a duty to bring incompetent hearsay, i.e., his conversation with Bertucci, to the trial court's attention on behalf of a defendant who failed to appear. In my opinion, neither the Code of Civil Procedure nor the Rules of Professional Conduct for attorneys create any such duty or raise the Bertucci conversation to the level of "material fact."
Finally, Pacific argued the trial court erred in entering judgment against it for damages below the first one million dollars. It contended that, as an excess insurer, it was not liable for any amount below the level of underlying insurance Barriere was obliged to maintain.[2] The majority agreed on the authority of Washam, 507 So.2d 806 (La.1987). Even assuming Pacific is correct, this fact warrants at most a modification of the quantum, not a new trial.
Under the auspices of doing "justice" here, we abrogate the objective rules laid down by the legislature to govern its administration. The rule governing the time in which a defendant must take action is clear, explicit, and not subject to misinterpretation. Pacific, a sophisticated defendant, *1010 failed to follow the rule and offers no explanation for its failure. I believe "justice" here lies with the quadraplegic plaintiff who followed the law, not with the defendant insurer who seeks to avoid the two million dollar consequences of its failure to act. The size of the judgment should be irrelevant to our decision. As Justice Marshall noted in Pennzoil Co. v. Texaco, Inc., the concept of equal justice under the law permits no other conclusion. 481 U.S. 1, 107 S.Ct. 1519, 1534, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).
The majority states it "by no means endorses the practice of failing to file an answer." The result reached here sends a different message. Accordingly, I am compelled to dissent.
NOTES
[1] Plaintiffs have claimed that the written waiver of uninsured motorist coverage signed by the president of Barriere is invalid since there is no board resolution authorizing the president to reject uninsured motorist coverage. This argument lacks merit since there is no requirement that there be such a resolution. See Cavalier v. Louisiana Farm Bureau Casualty Insurance Company, 530 So.2d 73 (La.1988); see also Cluse v. Pat's Warehouse et al., No. CW/88/1227 (La. App. 1st Cir. Sept. 28, 1988).
[2] "Rule 3.3 Candor toward the tribunal

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse."
[1] The majority relies heavily on the conclusive presumption of R.S. 22:1406(D)(1)(a)(ii) that a rejection of UM coverage becomes a part of the policy "when issued and delivered" whether or not the rejection is attached. It does not address other factors of equal significance. First, La.R.S. 22:628 provides that policy modifications are not effective until sent to the insured. Here, the plaintiffs subpoenaed all insurance documents and were not provided with any copy of any waiver of uninsured motorist coverage. Their conclusion no waiver existed was not unreasonable in light of R.S. 22:628. Also, the Pacific policy contained an integration clause: "[T]his policy embodies all agreements between [the insured] and PCIC or any of its agents relating to this insurance." No waiver provision was in the policy obtained by plaintiffs' counsel. Thus, under the terms of the contract itself, counsel could have reasonably concluded there had been no waiver of UM coverage.
[2] The language of the policy is at best ambiguous. "Schedule A" which sets out the underlying insurance levels is silent concerning uninsured motorist insurance. By its terms it only requires $1,000,000.00 in underlying insurance for "comprehensive automobile liability." It speaks of liability coverage, not UM coverage. In the "Insuring Agreement" section of the policy, Pacific states it is liable for injuries "not within the terms of underlying insurance but within the coverage of this insurance," or if "limits of liability of the underlying insurance are exhausted." In the "Conditions" section, the policy refers to the duty of the insured to reimburse Pacific for "any payment made under an uninsured motorist law or any similar law." In light of these ambiguous passages and the absence of a clear statement in the policy limiting Pacific's exposure for UM claims, I cannot say the trial court clearly abused its discretion in casting Pacific in judgment for all sums in excess of the underlying coverage of $20,000.00.