CARAWAY, J.
 

 | ] Defendant car dealer and car salesman appeal a default judgment against them rescinding the sale of a vehicle on the basis of fraud. Plaintiff alleged that he was fraudulently induced by representations on the part of the car salesman to purchase a vehicle, rather than merely sign as a cosigner for a friend. Defendants argue that the trial court erred in confirming the default judgment because plaintiff failed to establish a
 
 prima facie
 
 case of fraud. For the following reasons, we find the proof of a
 
 prima facie
 
 case of fraud lacking, and reverse the default judgment.
 

 Facts
 

 In July of 2008, Alvin Williams, the vice principal of a middle school in Monroe, Louisiana, received a phone call from a
 
 *1153
 
 former student, Antron Mason, asking Williams to co-sign on a loan to purchase a used 2007 Chevrolet Impala from Interstate Dodge, Inc. d/b/a Interstate Dodge Chrysler Jeep (“Interstate”). Mason, who was 19 years of age at the time, wished to purchase a vehicle for his college transportation. Williams reluctantly agreed to cosign the loan. On July 16, 2008, Thaddeus Jones, a salesman for Interstate, arrived with Mason at Williams’s home with several documents. Jones presented the documents to Williams and instructed him to sign next to several lines, which unbeknownst to Williams, made him the
 
 purchaser-
 
 of the car and the sole borrower for the credit sale transaction.
 

 On Saturday, July 19, after reviewing the documents in their entirety, Williams learned that he had actually purchased the vehicle and was the only party listed on the vehicle loan. The following Monday, July 21, 2008, |2Williams contacted Interstate about the mistake. Interstate refused to rescind the sale and further informed Williams that he was bound to fulfill the contract that he entered into. On July 24, 2008, Williams executed a memorandum, further requesting a full release by Interstate of all future loan payments. After Interstate persistently refused to release Williams from his responsibilities under the sales contract, Williams instructed Mason to return the vehicle to Interstate. Mason complied and the car was returned to the dealership on July 24, 2008. On August 12, 2008, an employee from Dodge delivered the vehicle to Williams’s residence while he was at work. The car was left in his driveway, without the keys.
 

 Although Mason made the original down payment in the amount of $1,500, Williams thereafter took responsibility for the payments under the loan as they became due. He did so under protest, and for the sole purpose of protecting his credit rating.
 

 On September 4, 2008, Williams filed suit against both Interstate and Thaddeus Jones for rescission of the contract and damages. In his petition, Williams alleged:
 

 At no time did Mr. Williams contemplate playing any role whatsoever other than that described to him as a “co-signer” who would agree only to secondary responsibility, in the event that Mr. Mason failed to make payments on the automobile, that
 
 Mr. Mason
 
 had chosen and agreed to purchase. (Emphasis in original.)
 

 Williams further alleged defendants knowingly misled him into believing that he was acting merely as a co-signer. Williams averred that such acts constitute fraud on the part of Jones personally and on the part of Interstate, vicariously. As a result of these purported fraudulent acts, Williams | sclaimed entitlement to full reimbursement of all interest payments made in connection with the automobile and further claimed reasonable attorney fees and damages, including but not limited to damage to his credit standing, monetary loss, and emotional distress.
 

 After suit was filed, the attorney for Williams entered into negotiations with defense counsel, seeking to resolve the dispute between the parties. Apparently, offers and counteroffers were made and on October 8, 2008, Williams, through his a1> torney, sent his final settlement offer. After no response was received, Williams’s attorney faxed a letter to counsel on December 19, 2008, instructing defendants to file an answer within the next ten days. Counsel for the defendants, who was out of town for the holidays, misplaced the letter from plaintiffs counsel and failed to file an answer. Consequently, on December 23, 2008, a preliminary default was entered.
 

 
 *1154
 
 Five weeks later, on January 27, 2009, a hearing on the default judgment was held, and the testimony which was transcribed is now a part of the appellate record. Williams’s testimony revealed that on July 16, 2009, he received a call from Thaddeus Jones asking him if he would sign necessary paperwork. Williams agreed, but informed Jones that he would have to bring the documents to his home in Bastrop, Louisiana. Jones, accompanied by Mason, arrived at Williams’s home with the paperwork fully prepared. He instructed Williams to sign his name next to several blank lines, which had been previously highlighted. Williams, who was in a hurry to get to a church meeting, quickly signed the highlighted blanks, L without noticing that he was signing as purchaser of the car, not as a “co-signer” for a loan. Williams made it clear that he intended to be bound as a co-signer:
 

 Court: Okay. Did you co-sign for a loan with him [Antron Mason]?
 

 Williams: Yes sir. That was the intent
 

 ⅜ * *
 

 Court: Did he [Thaddeus Jones] tell you that he needed you to co-sign on this loan?
 

 Williams: Yes sir.
 

 Court: Did you agree to co-sign?
 

 Williams: Yes sir. Strictly a co-signer.
 

 Upon being asked by the court why he would sign next to a designation for “purchaser’s signature,” Williams responded:
 

 Simply because of the fact that I didn’t read it and he had already had it highlighted on the original documents when he brought it to my house and I didn’t read it.
 

 Williams further testified to the damages he sustained as a result of this misrepresentation, including the $370 monthly car note, as well as the inconvenience caused by the car being parked in his driveway, with no keys to move the vehicle, for nearly five weeks.
 

 In addition to this testimony, several documents were entered into evidence at the confirmation hearing, including two copies of the “Motor Vehicle Buyers Order.” These two documents, which are identical in substance, are dated July 15, 2008 and July 16, 2008. Williams averred that he did in fact sign the July 16th version, but that his signature on the July 15th version was a forgery. Williams’s signature appears next to the word “purchaser” on this document. Also presented at the hearing was the [ r,financing agreement, which disclosed a 9% interest rate, $6,173.20 finance charge, and a total sales price of $28,093.20, which included the previously paid $1,500 down payment. Williams’s signature appears next to the words “buyer” or “buyer signs” a total of three times on this financing agreement. Other documents introduced included an inspection sticker receipt from Acme Glass, as well as an insurance policy issued by Louisiana Dealer Services Insurance, Inc., policy no. 1320291. Again, both of these documents were signed by Williams.
 

 In an effort to demonstrate Williams’s state of mind, i.e. that he was signing solely as a co-signer on the vehicle, a document titled “Auto Loan Payment/ Full Coverage Auto Insurance Agreement” was entered into evidence. The document does not appear to be prepared by Interstate. The document, notarized and dated July 19, 2008, three days
 
 after
 
 the signing of the initial purchase agreement, is drafted and signed by Paul Roberts. Mason also approached Roberts about co-signing the loan, but he was ultimately unable to help Mason because Roberts’s credit scores did not meet requisite criteria. The document purported to shift responsibility for the loan payments to Roberts and reaffirmed
 
 *1155
 
 Williams’s position that he was merely a co-signer.
 

 The trial court, after having heard Williams’s testimony and reviewing the above documents entered into evidence, rescinded the contract for fraud as never having been consummated. The court additionally awarded $1,800 in damages for inconvenience and $1,871 in attorney fees. The judgment was signed on January 27, 2009.
 

 | (¡Defendants filed a motion to annul judgment and motion for new trial on February 13, 2009. A hearing on the motion for new trial was held on July 23, 2009. At the hearing, the defense argued that it was an “ill practice,” under La. C.C.P. art. 2004, for plaintiff to obtain a judgment by default. Defense counsel believed that there was an implicit agreement to abstain from obtaining a default judgment while negotiations were ongoing and that he did not receive the December 19th letter faxed from plaintiff instructing him to file an answer because he was out of town for the holidays.
 

 Defendants’ motion for new trial was denied on July 23, 2009. Subsequently, this appeal ensued. On appeal, counsel for the defense argues that the confirmation of default by opposing counsel amounted to an ill practice and additionally urges that there was insufficient proof of underlying fraud to warrant the granting of a default judgment in favor of plaintiffs and the award of damages and attorney fees.
 

 Discussion
 

 A confirmation of a default judgment requires “proof of the demand sufficient to establish a prima facie case.” La. C.C.P. art. 1702(A);
 
 Power Marketing Direct, Inc. v. Foster,
 
 05-2023 (La.9/6/06), 938 So.2d 662. A
 
 prima facie
 
 case is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied.
 
 Sessions & Fishman v. Liquid Air Corp.,
 
 92-2773 (La.4/12/93), 616 So.2d 1254;
 
 Thibodeaux v. Burton,
 
 538 So.2d 1001 (La.1989). In other words, the plaintiff must present 1 competent evidence that convinces the court that it is probable that he would prevail at trial on the merits.
 
 Id.
 

 In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment under the manifest error standard.
 
 Arias v. Stolthaven New Orleans, LLC,
 
 08-1111 (La.5/5/09), 9 So.3d 815. Although there is a presumption that the evidence presented supports a default judgment, this presumption does not attach when the record of the confirmation hearing is before the appellate court. In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment is based was sufficient and competent.
 
 Johnston v. Broussard,
 
 41,477 (La.App.2d Cir.9/20/06), 940 So.2d 79;
 
 Bordelon v. Sayer,
 
 01-0717 (La.App. 3d Cir.3/13/02), 811 So.2d 1232,
 
 writ denied,
 
 02-1009 (La.6/21/02), 819 So.2d 340.
 

 A contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. La. C.C. art. 1953 provides:
 

 Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
 

 There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to an
 
 *1156
 
 other; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim’s consent |sto (a cause of) the contract.
 
 Shelton v. Standard/700 Associates,
 
 01-0587 (La.10/16/01), 798 So.2d 60;
 
 Taylor v. Dowling Gosslee & Associates, Inc.,
 
 44,654 (La.App.2d Cir.10/7/09), 22 So.3d 246,
 
 unit denied,
 
 09-2420 (La.2/5/10), 27 So.3d 299. In addition to the intent to defraud or gain an unfair advantage, there must also be a resulting loss or damage.
 
 Sun Drilling Products Corp. v. Rayborn,
 
 00-1884 (La.App. 4th Cir.10/3/01), 798 So.2d 1141,
 
 writ denied,
 
 01-2939 (La.1/25/02), 807 So.2d 840;
 
 Cooksey v. Heard, McElroy & Vestal, L.L.P.,
 
 44,761 (La.App.2d Cir.9/23/09), 21 So.3d 1011.
 

 Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skills. La. C.C. art. 1954;
 
 Martin v. JKD Investments, LLC,
 
 42,196 (La.App.2d Cir.6/20/07), 961 So.2d 575. Fraud is generally not available when one had the opportunity to read the contract and by doing so could have discovered the misrepresentation.
 
 Martin, supra; Heyl v. Heyl,
 
 445 So.2d 88 (La.App. 2d Cir.1984),
 
 writ denied,
 
 446 So.2d 1288 (La.1984);
 
 Mitchell v. Bertolla,
 
 397 So.2d 56 (La.App. 2d Cir.1981),
 
 writ denied,
 
 400 So.2d 669 (La.1981).
 

 Moreover, we note that signatures are not mere ornaments.
 
 Tweedel v. Brasseaux,
 
 433 So.2d 133 (La.1983). A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it.
 
 Southern Treats, Inc. v. Titan Properties, L.L.C.,
 
 40,873 (La.App.2d Cir.4/19/06), 927 So.2d 677,
 
 writ denied,
 
 06-1170 (La.9/5/06), 936 So.2d 1271;
 
 First South Farm Credit, ACA v. Gailliard Farms, Inc.,
 
 38,731 (La.App.2d Cir.8/18/04), 880 So.2d 223.
 

 Since the complete record of the hearing for confirmation of default is before us, we will determine whether Williams’s evidence proved fraud in his contractual undertakings with Interstate. First, as expressed in the allegations of his pro se petition and his testimony, Williams’s lay understanding of his role in the transaction was for him to “co-sign,” with “secondary responsibility.” Under the suretyship provisions of the Civil Code, Article 3037 addresses this type of “cosigner” situation as follows:
 

 One who ostensibly binds himself as a principal obligor to satisfy the present or future obligations of another is nonetheless considered a surety if the principal cause of the contract with the creditor is to guarantee performance of such obligations.
 

 See also, Revision Comments to La. C.C. art. 3037. Otherwise, to effect the substance of Williams’s understanding of his role, he could have signed a separate surety agreement and not been a “co-signer” with Mason on any contract. Nevertheless, this use of the informal term, “cosigner,” as opposed to guarantor or surety, invites the possibility of confusion, as indicated by the second paragraph of Article 3037:
 

 A creditor in whose favor a surety and principal obligor are bound together as principal obligors in solido may presume they are equally concerned in the matter until he clearly knows of their true relationship.
 

 Additionally, the record leaves some doubt concerning Mason’s role in the transaction. Mason did not testify. The evidence reveals that he paid Interstate a $1,500 down payment. There is no evi
 
 *1157
 
 dence that Mason was not also contractually obligated in some manner to Interstate. Furthermore, |inwhile the evidence revealed Mason’s unilateral decision to choose the car for purchase from Interstate and Mason’s need for transportation, Williams never testified who was to pay the monthly payments for the car. While the allegations of the petition indicated that Mason was to make monthly payments, Williams’s testimony was that Mason neither made the payments nor used the car during the pendency of the dispute.
 

 Second, with this lack of clarity of the contractual relationships between Interstate, Williams and Mason, the evidence for fraud concerning Interstate’s intent to obtain an unjust advantage or to cause damage to Williams is not established from the record of the confirmation of default. Williams admits that he was to be contractually obligated to Interstate as a surety for the principal loan obligation for the car. In that capacity, if Mason could not or would not make the monthly payments for the principal obligation, Williams would be required to pay or to otherwise risk his credit standing which he now claims to have been damaged. Williams’s credit standing was placed on the line for Interstate’s advantage by his admitted decision to become obligated even in a secondary capacity for Mason’s car loan. The evidence therefore does not demonstrate Interstate’s intent “to obtain an unjust advantage” or to cause any greater risk of loss to Williams which is critical to his fraud claim under Civil Code Article 1953.
 

 From this perspective, Williams’s claim against Interstate does not appear to justify the rescission of his obligation for fraud which the default judgment awarded. Instead, with the admission of his intended obligation as surety, the facts he has alleged and provided at the confirmation hearing | ¶, concerning his rushed execution of the loan documents justify only a claim for error in the formation of the contract and for correction and modification of the transaction to clarify his role as surety for Mason’s debt. Accordingly, we find that Williams failed to establish proof of the demand of rescission for fraud sufficient to establish a
 
 prima facie
 
 case through the confirmation proceeding for the default judgment, and the judgment is reversed.
 
 [1]
 

 Conclusion
 

 For the foregoing reasons, the default judgment is reversed and remanded for further proceedings. Costs of this appeal are assessed to appellee.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Because of this ruling, we do not consider Interstate’s claim that the default judgment must be set aside because it was obtained by “ill practice.”