SEXTON, Judge Pro Tem.
|,The defendant, Jerry Roberts, appeals from trial court rulings entering a default judgment against him and denying his motion for new trial. For the following reasons, we reverse the trial court rulings, vacate the default judgment, and remand for further proceedings.
FACTS
In November 2008, the plaintiff, Alan D. Cameron, executed a timber sale agreement with the defendant, who is a timber consultant. The timber deed, covering a tract of approximately 50 acres, set forth the amount to be paid for various types of wood. The parties specifically agreed:
All hardwood (oak) will be left unless overcrowded closer than 15' or diseased.
All pine will only be thinned according to standard thinning or pine that is damaged.
Roberts subcontracted the cutting of the timber to J.K.M. Logging, Inc. (“J.K.M.”). This agreement, signed by John Kelley Martin, Jr., specified that J.K.M. would carry various types of insurance. The agreement included an indemnity and hold harmless clause which stated:
Vendee agrees to indemnify and hold Vendor harmless from personal injuries or property damage sustained by any employee, agent, or any third person, and resulting solely from the logging operation conducted by the Vendee, it being expressly agreed and understood that this provision shall not [be] applicable if Vendor, his agents, heirs, employees and/or assigns, are guilty of any negligent act of omission that causes and/or contributes to the aforementioned damage or personal injury.
On the sheet listing the price to be paid for various types of wood was the comment in capital letters “NO OAK TO BE CUT!!!”
A dispute arose over the way the timber was cut. On December 17, 2008, Cameron, Roberts, and Martin signed a memo specifying that a check |2in the amount of $19,258.73, that Cameron received from Roberts, represented 93 loads that J.K.M. cut, harvested, and paid Roberts. The memo stated that the check was not the final accounting on the tract. All parties agreed that there were issues of damage, road work, fence repairs, erosion control, and reforestation that needed to be resolved.
*441 On October 20, 2009, Cameron filed suit against Roberts, J.K.M., and XYZ insurance company for negligence and breach of contract. He claimed that he called upon the defendants for the additional work to be done, but these matters were not resolved. Cameron also alleged that the timber and the property had been damaged by the defendants. He asserted that, contrary to their agreement, the defendants harvested nearly all of the hardwood and oak, and the pine trees were over-thinned. Cameron stated that his damages arising from the negligence and breach of contract exceeded the value of the check for the sale of the timber delivered to him.
On November 5, 2010, J.K.M. filed an answer. Roberts did not. Cameron and J.K.M. reached a settlement in this matter. J.K.M. agreed to pay Cameron $40,000 in damages. On December 14, 2011, the trial court signed an order dismissing Cameron’s claims against J.K.M. and XYZ insurance company, with prejudice, and reserving Cameron’s rights against Roberts.
The minutes reflect that on December 14, 2011, on written motion to the court, a default was entered. After a hearing on December 20, 2011, a default judgment was confirmed against Roberts for $60,000. On December 29, 2011, Roberts filed a motion for new trial, protesting the entry of the |sdefault judgment against him. He argued that, after Cameron filed suit against the defendants, Martin told him that he would secure defense counsel for both J.K.M. and Roberts. Because of this belief by Roberts, no answer was filed on his behalf. Roberts claimed that, because his agreement with J.K.M. specified that the logging company was obligated to insure Roberts, J.K.M.’s insurance company had a duty to defend him against any lawsuits arising from the logging operation. He argued that he should at least be entitled to credit for the $19,258.73 paid to Cameron.
On April 24, 2012, a hearing was held on the motion for new trial. Roberts testified that when he was served with Cameron’s lawsuit, he contacted Martin. Due to the indemnification and hold harmless clause in his agreement with J.K.M. and his discussions with Martin, he thought J.K.M. would take care of the lawsuit. According to Roberts, Martin said that he would take care of Cameron’s petition, that he would handle it, and that Roberts would be covered. Roberts also stated that, under the terms of his timber sale deed with J.K.M., he thought he was covered regarding any lawsuits asserted or judgments rendered against him. Roberts testified that J.K.M. cut the timber on Cameron’s property, but Roberts acknowledged that he supervised the work.
At the hearing, the affidavit of Martin was admitted into evidence. In the affidavit, Martin stated that he is the president of J.K.M. and that he did not tell Roberts that J.K.M. would secure defense counsel for Roberts concerning the allegations in this matter. Martin said that Roberts did not|4make a demand for J.K.M. to indemnify him before Roberts was cast in judgment.
Roberts also argued that the proof offered at .the confirmation of default was not sufficient to support the judgment. He contended that Cameron produced no proof to support his claim that Roberts actually supervised J.K.M. Roberts maintained that Cameron did not provide proof of the amount of damage done to the property. He pointed out that there was no testimony by an appraiser placing a value on the timber and there was no report by a forester or other authentication of the amount of damages claimed.
At the conclusion of the hearing, the trial court found that Roberts had a re *442 sponsibility to see that an answer was filed on his behalf and that he was properly defended. According to the trial court, any aspects of the indemnity or hold harmless agreement between J.K.M. and Roberts would be properly decided on the third party demand and this was a separate issue from the motion for new trial.[1]
Regarding the sufficiency of Cameron’s proof on the default judgment, the trial court found that, based on the contracts, photographs of the property, and Cameron’s testimony, there was sufficient proof to grant the default judgment. On those grounds, the trial court denied the motion for new trial asserted by Roberts. Roberts appealed the default judgment and the denial of the motion for new trial.
^SUFFICIENCY OF THE EVIDENCE
On appeal, Roberts asserted numerous assignments of error essentially arguing that Cameron failed to present sufficient evidence to establish a prima facie case for the confirmation of default. These arguments have merit.
Legal Principles
La. C.C.P. art. 1701 provides in pertinent part:
A. If a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him. The judgment may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the judgment shall consist merely of an entry in the minutes.
La. C.C.P. art. 1702 states in relevant part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default....
B. (1) When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima fa-cie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
(2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
IfiLa. C.C.P. art. 1703 states:
A judgment by default shall not be different in kind from that demanded in the petition. The amount of damages awarded shall be the amount proven to be properly due as a remedy.
In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment. The determination is a factual one governed by the manifest error standard of review. *443 Arias v. Stolthaven New Orleans, L.L.C., 2008-1111 (La.5/5/09), 9 So.3d 815. A court of appeal may not overturn a judgment of a trial court absent any error of law or a factual finding that was manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Arias v. Stolthaven New Orleans, L.L.C., supra.
A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. Williams v. Smith, 45,069 (La.App.2d Cir.5/28/10), 37 So.3d 1133, writ denied, 2010-1530 (La.10/1/10), 45 So.3d 1103. In order for a plaintiff to obtain a default judgment, he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254 (La.1993); Thibodeaux v. Burton, 538 So.2d 1001 (La. 1989); Youngblood v. Southern Air, Inc., 46,183 (La.App.2d Cir.3/2/11), 58 So.3d 1020; Williams v. Interstate Dodge, Inc., 45,159 (La.App.2d Cir.4/14/10), 34 So.3d 1151. The plaintiff must present competent evidence that convinces the trial court that it is probable that he would prevail on a [7trial on the merits. Thibodeaux v. Burton, supra; Williams v. Interstate Dodge, Inc., supra; Carroll v. Coleman, 27,861 (La.App.2d Cir.1/24/96), 666 So.2d 1264. The presumption that the default judgment was rendered upon sufficient evidence and is correct does not apply where, as in the present case, the testimony is transcribed and is contained in the record. In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment was based was sufficient and competent. Williams v. Smith, supra; Carroll v. Coleman, supra.
At the hearing to confirm a default, the rules of evidence generally apply. La. C.E. art. 1101(A); Arias v. Stolthaven New Orleans, L.L.C., supra. The plaintiff must follow the rules of evidence even though there is no opponent. Because at a default confirmation there is no objecting party, to prevent reversal on appeal, both the plaintiff and the trial judge should be vigilant to assure that the judgment rests on admissible evidence that establishes a prima facie case. Thus, inadmissible evidence, except as specifically provided by law, may not support a default judgment even though it was not objected to because the defendant was not present. Arias v. Stolthaven New Orleans, L.L.C., supra. Hearsay evidence does not sustain the burden of proving the prima facie case necessary for confirmation of default. Carroll v. Coleman, supra; McRay v. Booker T. Washington Nursing Home, 30,399 (La App.2d Cir.4/8/98), 711 So.2d 772; Martin v. Sanders, 35,575 (La.App.2d Cir.1/23/02), 805 So.2d 1209.
|8A new trial shall be granted, upon contradictory motion of any party, when the judgment appears clearly contrary to the law and the evidence. See La. C.C.P. art.1972. A new trial may be granted in any case if there is good ground therefor. La. C.C.P. art.1973. New trials are granted in the interest of justice and are left largely to the discretion of the trial court, but this discretion is not immune from appellate review. In a case of manifest abuse, the appellate court will not hesitate to set the trial court’s ruling aside or grant a new trial. Meshell v. Russell, 589 So.2d 86 (La.App. 2d Cir.1991). We are especially careful to review denials of new trials in cases of default judgments due to the general policy consideration weighing in the defendant’s favor that every litigant should be allowed his day in court. Meshell v. Russell, supra.
A contract is an- agreement by two or more parties whereby obligations are ere- *444 ated, modified, or extinguished. La. C.C. art.1906. An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance. La. C.C. art.1994. Damages are measured by the loss sustained by the obligee and the profit of which he was deprived. La. C.C. art.1995.
To prevail in a negligence action, the plaintiff must prove that the defendant owed a duty, that the duty was breached and that the defendant’s substandard conduct was a cause of the plaintiffs injuries and damages. Williams v. Smith, supra.
laDiscussion
Roberts argues that the evidence and testimony presented by Cameron at the confirmation of default were not sufficient to support the default judgment. In several assignments of error, Roberts maintains that Cameron failed to establish that his damages totaled $100,000, as he claimed. Roberts contends that Cameron is not qualified to testify as to the calculation and extent of damages and was not a disinterested witness or an expert in forestry. Roberts asserts that the default judgment is improper because Cameron did not prove that the $60,000 he seeks from Roberts is properly due as actual damages. According to Roberts, “For numbers that are supposed to represent actual damages, the amounts sought by the plaintiff in his petition are curiously round.”
Roberts claims that Cameron’s testimony regarding his damages was speculative. Cameron never established why the property was so valuable for hunting or that it is now valueless. Cameron testified that his damages would be “no lower than $100,000,” but they could be higher. Roberts claims that this shows that Cameron is unsure of the proper value of his damages. Roberts urges that it is unclear whether this amount is to compensate for the reduction in the value of the land, loss of enjoyment, cost of replacing trees, or some combination of these factors.
In other assignments of error, Roberts asserts that Cameron failed to establish that Roberts was liable for any damages or that he was liable for $60,000. Roberts asserts that there was no evidence of the extent of his involvement in the cutting or his authority to direct J.K.M., which he | inmaintains was an independent contractor. He contends that Cameron was required to show that Roberts was exercising control over J.K.M. Roberts also urges that the “handshake agreement” claimed by Cameron is not sufficient to prove an obligation on the part of Roberts. Roberts maintains that Cameron’s testimony at the hearing to confirm the default was based on leading questions and hearsay, inadmissible evidence that cannot be used to support the default judgment.
Our review of the record supports Roberts’ claim. At the hearing to confirm the default, the proof submitted to the court consisted of the contract between Cameron and Roberts; the memo signed by Cameron, Roberts, and Martin; photos of the property; and the testimony of Cameron. At the hearing, Cameron testified that, even though the parties agreed that no oaks were to be cut on the property, all the oaks were cut down. He said that the pine trees were over-thinned, the property was damaged, and the defendants did not clean up as they agreed to do. He stated that some of the trees that were left standing blew down due to over-thinning. Cameron testified that he had to take other measures to dispose of the debris and deal with erosion problems. Cameron asserted that he hunted on the property and that his “dream property” was basically destroyed for the purposes for which he intended to use it.
*445 Cameron stated that, after consulting with a forester, he had discussions with Martin and Roberts about the amount of damages. Cameron said that he had a handshake agreement with the defendants for $100,000 to repair the damage. J.K.M. agreed to accept responsibility for a |n portion of that amount. Cameron contemplated that J.K.M. and Roberts would each pay $50,000. J.K.M. felt that, due to the involvement of Roberts, its share should be less. J.K.M. ultimately agreed to pay Cameron $40,000.
This scanty evidence is not sufficient to establish the amount of damage done to the property or that Roberts was liable for $60,000 in damages. In his petition, Cameron alleged that it would be necessary to call certain expert witnesses to testify at trial. At the hearing on the confirmation of default, Cameron introduced into evidence a memo signed by all the parties acknowledging that there was some damage to the property. There was no specification of the amount of damage. When testifying at the confirmation of default, Cameron merely stated that, after consulting with a forester, he had discussions with Martin and Roberts about the amount of damage done to the property. Cameron claimed that he had a handshake agreement with Martin and Roberts about the amount of damages, but offered no proof to corroborate his testimony.[2]
Cameron did not offer any evidence to show how many trees were allegedly cut in violation of his agreement with Roberts, the value of those trees, or the amount necessary for reforestation. While Cameron testified that he had to take other measures to dispose of debris on the property and deal with erosion problems, he did not establish with competent proof what was actually done or the cost of those measures.
Although he claimed that the property was ruined for hunting, he offered no expert testimony to prove this allegation or to establish how long it would take to establish a suitable habitat for hunting on the property. Further, he did not establish that he was an expert in forestry or that he was qualified in any way to quantify the damages claimed.
Cameron also failed to establish that Roberts was liable to him for $60,000 in damages. While there seems to be some agreement between the parties that Roberts supervised the timber cutting, the degree of his involvement was not established. Cameron offered no insight into how he and J.K.M. concluded that Roberts should be liable for $60,000.
Cameron’s testimony was largely given in response to leading questions and included hearsay testimony as to alleged conversations with a forester and with Martin and Roberts.
Based upon this record, Cameron simply did not present proof of his demand sufficient to establish a prima facie case against Roberts. The trial court erred in confirming the default judgment without sufficient evidence. The trial court also erred in failing to grant a motion for new trial in favor of Roberts because the default judgment was contrary to the law and evidence.
GOOD FAITH
Roberts argues that the trial court erred in failing to vacate the default judgment *446 against him where the default was the result of Roberts’ good faith reliance on a third party, J.K.M., to provide representation for Roberts and a defense against Cameron’s lawsuit. Roberts maintains that, due to the indemnity and hold harmless clause in his agreement with J.K.M., and |1sJ.K.M.’s obligation to provide insurance, he was justified in his good faith belief that J.K.M. would handle the litigation on his behalf. Roberts asserts that he also had an oral agreement with J.K.M. to provide an attorney to defend him in this matter. Therefore, he argues that his failure to answer Cameron’s lawsuit should not be held against him.
He who seeks to have a default judgment against him set aside must allege and prove that he had good reasons for his nonappearance and failure to timely plead. Meshell v. Russell, supra. The jurisprudence pronouncing and applying this legal principle largely deals with cases in which the defendant seeks a new trial after the entry of a default judgment, claiming there was a good reason for nonappearance. See Pollock v. Talco Midstream Assets, Ltd., 46,302 (La.App.2d Cir.5/18/11), 70 So.3d 835, writ denied, 2011-1295 (La.9/23/11), 69 So.3d 1166; Meshell v. Russell, supra; West Consolidated Co., Inc. v. Creole Fisheries, 616 So.2d 268 (La.App. 2d Cir.1993); Kugle v. Hennessy, 480 So.2d 849 (La.App. 2d Cir.1985).
However, in the present case, the defendant has shown that there was insufficient evidence to support the default judgment. In such a case, the failure to account for nonappearance is not fatal to the claim to overturn a default judgment. See and compare Davis v. Coregis Ins. Co., 2000-00475 (La.App.3d Cir.12/27/00), 789 So.2d 7, writ denied, 2001-0292 (La.3/30/01), 788 So.2d 1192; Ereunao Oil & Gas, Inc. v. Northern, 98-1239 (La. App.3d Cir.2/3/99), 736 So.2d 893.
uUnder the facts presented in this case, we find that, as stated by the trial court, the issues regarding Roberts’ belief that J.K.M. and its insurers owed him a duty to defend against Cameron’s lawsuit, and whether there was a valid agreement to do so, are matters more properly considered in the third party demand pending between Roberts and J.K.M. Therefore, we do not reach consideration of this issue.
CONCLUSION
For the reasons stated above, the trial court’s rulings confirming a default judgment against Roberts and denying Roberts’ motion for new trial are reversed and the default judgment is vacated. The matter is remanded to the trial court for further proceedings. Costs in this court are assessed to the plaintiff, Alan D. Cameron.
REVERSED; DEFAULT JUDGMENT VACATED; REMANDED.

. During the course of the proceedings, Roberts filed a third party demand against J.K.M. The logging company filed various exceptions. At the conclusion of the hearing on the motion for new trial, the trial court ruled on J.K.M.'s exceptions. However, those issues are not before the court on this appeal.

. A party who demands performance of an obligation must prove the existence of the obligation. La. C.C. art. 1831. When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of 500 dollars may be proved by competent evidence. If the price or value is in excess of 500 dollars, the contract must be proved by at least one witness or other corroborating circumstances. La. C.C. art. 1846.